[L. A. No. 108.    Department Two.—March 10, 1897.]

# R. H. SHOEMAKER, JR., RESPONDENT, *v.* DAVID D. ACKER, APPELLANT.

CONTRACT—CONSTRUCTION—INTENTION OF PARTIES.—A contract must be construed, with reference to the subject matter, to the circumstances under which it was made, and to the evident intention of the parties, as made apparent by all the subject matter and circumstances.

ID.—AGREEMENT TO DEVOTE WHOLE TIME TO MANAGEMENT OF LAND—IMMATERIAL ABSENCES NOT A BREACH—PREVENTION OF PERFORMANCE—RESCISSION—ACTION BY MANAGER.—An agreement by one party in consideration of the purchase of land and the furnishing of means for its improvement by another, and of a share in the profits, to "devote his whole time and attention to the management, care, cultivation, and improvement of said land, and the sale of said land and products thereof," is not to be construed as requiring that the manager should positively remain on the land all of the time, and is not broken by occasional short absences from Saturday afternoon to Monday noon, where it appears that the manager faithfully managed, cared for, cultivated, and improved the land, and attended to sales and products thereof, and only absented himself when his actual presence was unnecessary, and that his short absences did not result in any loss or injury, or constitute any defect in management; and such immaterial absences cannot justify the other party in electing to annul the contract, or to prevent its further execution on the part of the manager, but the manager is justified in treating the contract as rescinded by such prevention, and may at once maintain an action for damages for its breach by the other party, and recover the entire damages resulting therefrom.

ID.—DAMAGES—PROSPECTIVE PROFITS—DIFFICULTY OF ASCERTAINING.—When prospective profits are not collateral to the subject matter of the contract, the breach of which is the subject of the action, but their loss is the natural and direct consequence of its breach, they may be recovered, and he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages.

ID.—EVIDENCE—PRESENT VALUE OF LEMON ORCHARD—PROSPECTIVE PROFITS—DELAY OF TRIAL—IMPORTANCE OF EVIDENCE—MATURITY OF

TREES.—The court may permit evidence of the present value of a lemon orchard, in the prospective profits of which the plaintiff is interested, under the contract for breach of which the action is brought, nor as against a wrongdoer is it to be presumed that it will become less valuable; but such evidence is the more important in proportion as the delay of the trial approaches more nearly the time when the trees will mature, and the land be in the condition then contemplated by the parties; and the plaintiff may show the condition of things existing at the time of the trial as affecting the prospective profits of the orchard.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. WALDO H. YORK, Judge.

The facts are stated in the opinion of the court.

*John D. Pope,* for Appellant.

Plaintiff having committed a breach of the contract, the defendant was justified in treating it as annulled. (*Twomey* v. *People's Ice Co.*, 66 Cal. 233; *Dunn* v. *Daly,* 78 Cal. 640; *Porter* v. *Arrowhead Reservoir Co.*, 100 Cal. 500; *Golden Gate etc. Co.* v. *Sahrbacher,* 105 Cal. 114; *Textor* v. *Hutchings,* 62 Md. 150; *Hosmer* v. *Wilson,* 7 Mich. 294; *Derby* v. *Johnson,* 21 Vt. 17; *James* v. *Adams,* 16 W. Va. 245; *Clement* v. *Meserole,* 107 Mass. 362; *Parker* v. *Russell,* 133 Mass. 74; *Haines* v. *Tucker,* 50 N. H. 311; *McCormick* v. *Basal,* 46 Iowa, 235; *Gill* v. *Vogler,* 52 Md. 663; *Smith* v. *Lewis,* 24 Conn. 624; 63 Am. Dec. 180; *Catlin* v. *Tobias,* 26 N. Y. 217; 84 Am. Dec. 183; *Stephenson* v. *Cady,* 117 Mass. 6; *Blackburn* v. *Reilly,* 47 N. J. L. 290; 54 Am. Rep. 159; *Rugg* v. *Moore,* 110 Pa. St. 236.) The court erred in its construction of the law as to the measure of damages. It was not proper to permit questions to be propounded to the witnesses as to what in their opinion the ranch would have been worth if the trees had been three and one-half years old. (*Pendleton* v. *Cline,* 85 Cal. 142; *Martin* v. *Deetz,* 102 Cal. 55, 67; 41 Am. St. Rep. 151; *Anvil Min. Co.* v. *Humble,* 153 U. S. 540; Sutherland on Damages, sec. 55.) If the plaintiff was entitled to recover, the measure of damages was one-half the value of the place at the time of breach, over and above the original cost and all expendi-

tures thereon, this value to be estimated subject to the performance of the contract on the part of the plaintiff. (*Rhodes* v. *Baird*, 16 Ohio St. 573; Sedgwick on Damages, 6th ed., 78, note; Sutherland on Damages, sec. 62.)

*William D. Stephens*, and *Ben Goodrich*, for Respondent.

Assuming that there was a technical breach on the plaintiff's part, no injury resulted therefrom, and the defendant was not authorized to rescind. (Am. & Eng. Ency. of Law, 922, notes; 2 Parsons on Contracts, 7th ed., 793, 813, and notes; *Lassing* v. *James*, 107 Cal. 348.) The prospective profits to be derived from planting the trees, etc., was properly considered in estimating the damages. (*Stoddard* v. *Treadwell*, 26 Cal. 307; *Burrell* v. *New York etc. Salt Co.*, 14 Mich. 38; *United States* v. *Behan*, 110 U. S. 344; *Rice* v. *Whitmore*, 74 Cal. 619; 5 Am. St. Rep. 479; *Baldwin* v. *Bennett*, 4 Cal. 392; *McCauley* v. *Brooks*, 16 Cal. 13; *Webster* v. *Wade*, 19 Cal. 291; 79 Am. Dec. 218; *Hale* v. *Trout*, 35 Cal. 230; *Cederberg* v. *Robison*, 100 Cal. 94, 99.)

McFARLAND, J.—This action was brought to recover damages in the sum of thirty-five thousand dollars for an alleged breach of a written contract between the parties. The jury returned a verdict for plaintiff in the sum of two thousand dollars, for which judgment was entered; and defendant appeals from the judgment and from an order denying his motion for a new trial.

The contract out of which the litigation arises was executed on the fourth day of October, 1892; and, as appellant relies mainly upon two points for a reversal, the parts of said contract necessary to be considered may be briefly stated as follows: The contract recites that the appellant was about to invest from five thousand dollars to seven thousand five hundred dollars in the purchase of unimproved land, to be selected by the parties; that the land should be cultivated, improved, and planted in lemon or orange trees, or partly in each,

as the said appellant might elect; that the respondent was to have charge of the improvements and cultivation of the land, and was to have an interest in the income and profits that might be derived from the sale of the land or its products, and in the increase and value of said land from said improvements or otherwise.   It is then agreed that the respondent "will devote his whole time and attention to the management, care, cultivation, and improvement of said land, and the sale of said land and the products thereof"; that the appellant would provide for respondent a suitable dwelling-house upon the land, and give him a certain amount monthly for his maintenance; that the appellant should furnish the necessary funds for the purchase of trees, implements, labor, etc.; that the appellant would not sell any portion of the land within five years from the date of the contract, except with the consent of the respondent; that whenever any portion of the land should be sold, the profit derived therefrom should be ascertained by a method particularly stated in the contract; that whenever any income should be derived from the land in any one year, certain deductions of expenses should be made, and the balance should be considered as profits, and all profits should be equally divided between the parties; that the respondent should keep an account of all moneys received by him from the sale of the products of the land, and that, if any portion of the land should remain unsold upon the expiration of five years, the value thereof should be ascertained by certain appraisers, to be selected by the parties, and if from such valuation there should appear to be any profit, that the respondent should be entitled to receive a deed for such portion of the land as would, according to said appraisal, represent in value his share of the profits; and that "this agreement shall continue for five years, unless all the land should be sold in the mean time, whereupon it shall cease and determine."

In accordance with this contract, about one hundred and ten acres of land was purchased, at the price of five

thousand seven hundred and fifty dollars, and immediately thereafter the respondent entered upon the performance of his obligations under said contract, and under his management down to the seventeenth day of January, 1894, about seventy acres of said land had been cultivated, improved, and planted in lemon trees, as determined upon by the appellant. On said January 17, 1894, the appellant notified the respondent that for certain reasons he elected to consider the contract annulled, after which the respondent, in accordance with the appellant's demand, left the ranch, and gave up its management. It is not contended by appellant that he did not prevent the further execution of the contract, or that the respondent had not the right to consider it rescinded by the act of appellant, provided the appellant was not justified by the conduct of the respondent in putting an end to the contract.

Appellant's contention that he had a right to put an end to the contract is based upon an alleged violation by respondent of his covenant to "devote his whole time and attention to the management, care, cultivation, and improvement of said land." The facts as to that contention are these: The respondent did faithfully and well manage the cultivation of said land, and the planting of same in trees, the care of the trees, etc.; but on several occasions he left the land on Saturday afternoon and did not return until about noon on Monday, and, upon the remonstrance of the appellant, the respondent claimed that he had the right to so absent himself from the ranch when he could do so without any damage or loss occurring through such absence, and it fully appears that there was no defect in the management of the land, and no loss of any kind occasioned by such absence. Appellant contends, however, that the said agreement in the contract that appellant would devote "his whole time" was violated by his occasional absences, as above stated. We do not think that this contention can be maintained. A contract must be construed, with reference to the subject matter, to the circumstances

under which it was made, and to the evident intention
of the parties as made apparent by all the language
used—keeping in view the said subject matter and cir-
cumstances.    In the case at bar the most literal con-
struction of the contract would not include a requirement
that the respondent should positively remain on the
land all the time.    Indeed, his continuous personal pres-
ence there would have prevented the performance of
many of his duties under the contract.    His duty was
the *"management*, care, cultivation, and improvement of
said land, and the sale of said land and the products
thereof"; and as he performed this duty faithfully and
well until he was prevented by appellant from doing so
any longer, and as his short absences from the land were
when he was "not needed there" and when his "presence
was not necessary," and did not result in any loss or in-
jury, or constitute any defect in management, we think
that the jury were entirely warranted in finding that he
had not by such absences committed any breach of the
contract.

2. The second point made by appellant on the ques-
tion of proper damages, although not as elaborately
argued as the first point, is, in our opinion, one of
graver import.

" Prospective profits," as damages, present one of the
most difficult subjects with which courts have to deal.
It is not the law, however, that they can never be re-
covered.    Our own code states the rule to be that the
measure of damages for the breach of a contract is " the
amount which will compensate the party aggrieved for
all the detriment proximately caused thereby, or which
*in the ordinary course of things would be likely* to result
therefrom."    (Civ. Code, sec. 3300.)    An examination
of the authorities will show that the cases in which
future profits were rejected as " speculative" or " too re-
mote" were cases where the asserted future profits were
entirely collateral to the subject matter of the contract,
and not consequences flowing in a direct line from the
breach of such contract.    Familiar instances of profits

which are thus speculative and remote are those which might have been realized on a new contract with a third person which could have been consummated with the proceeds of the contract sued on if the latter had not been broken; for in such a case the profits on the new contract are wholly collateral to the one broken, do not directly flow from it, and are not stipulated for or contemplated by the parties to the contract sued on.    But where the prospective profits are the natural and direct consequences of the breach of the contract they may be recovered; and he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages.    (Sutherland on Damages, 2d ed., secs. 64, 72, 107, 120; *Masterton* v. *Mayor,* 7 Hill, 61; 42 Am. Dec. 38; *United States* v. *Behan,* 110 U. S. 344; *Rice* v. *Whitmore,* 74 Cal. 619; *Hale* v. *Trout,* 35 Cal. 229; *Stoddard* v. *Treadwell,* 26 Cal. 308; *Cederberg* v. *Robison,* 100 Cal. 98, 99; *Tahoe Ice Co.* v. *Union Ice Co.,* 109 Cal. 242.) In Sutherland on Damages, section 64, the author, after speaking of profits which *are* too remote, says— quoting from a decided case: " But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties stand upon a different footing.    These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation.    They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement."

We think that the damages claimed in the case at bar are of the kind which are recoverable under the principles above stated.    Contracts for the purchase and sale of future crops running through a series of years have been recognized as valid (Civ. Code, sec. 1768; *Blackwood* v. *Cutting etc. Co.,* 76 Cal. 212; 9 Am. St. Rep. 199; *Brown* v. *Anderson,* 77 Cal. 236); and actions have

frequently been maintained for damages for the destruction of growing crops, although, of course, there was no absolute certainty that they would have matured. (Sutherland on Damages, sec. 120, and cases there cited.)

Appellant particularly objects to certain questions asked by respondent of his witnesses, of which the following is a fair specimen: "What, in your opinion, is the present value of a lemon orchard, situated as this is, and of the varieties of which this orchard is composed, that is, of Eureka, Villa Franca, and Lisbon varieties, supposing the orchard to be of the age of four and a half years, or to have been planted out four and a half years?" It is contended that this question involved matters too remote and speculative, but we do not think so. As appellant by his own wrong forced respondent into the strait of proving damages, he cannot complain that the latter used the best methods left him for accomplishing the result. Of course, all property is somewhat vacillating in value, but land is usually as little so as any other kind of property; and certainly, as against a wrongdoer, there is no presumption that land will be of less value in a year or two hence than at the present time. Upon the breach of the contract by appellant, in manner as hereinbefore stated, respondent was entitled to sue at once and to recover the entire damages resulting from the breach (*Hale* v. *Trout, supra*), and the questions objected to would have been admissible if they had been asked immediately after such breach; but the trial at which the questions were asked did not take place until 1895, which was much nearer the time when " in the ordinary course of things" the trees would mature, and the land would be in the condition which the parties contemplated it would be at the expiration of five years. This rendered the offered evidence more valuable; for in an action upon a contract which contemplates a long period of time for performance, if the trial be delayed, the conditions existing at the time of the trial, as affecting the

prospective profits, may be shown. In such a case "parties are entitled to the benefit of any facts transpiring subsequently to the bringing of the action which show more clearly the gains prevented by the breach complained of, or the damages sustained from such a cause of action, or any other, the injurious effects of which extend into the future." (Sutherland on Damages, sec. 107. See, also, *Tahoe Ice Co.* v. *Union Ice Co.*, *supra.*) As was said in *Cederberg* v. *Robison, supra,* a party to such a contract "is not to be deprived of all profits because they are not susceptible of exact measurement." In Sutherland on Damages, the author, speaking of an action for damages for the destruction of growing crops, and basing his text upon authorities cited, says: "The jury may estimate, with the aid of testimony, the value of the crop at the time of its destruction, in view of all the circumstances existing at any time before the trial, favoring or rendering doubtful the conclusion that it would attain to a more valuable condition, and all the hazards and expenses incident to the process of supposed growth or appreciation"; and within that principle, under the circumstances of the case at bar, the jury had the right to know the present value of an orchard like the one here involved, if matured as contemplated by the contract. Of course, they were also to consider "all the hazards and expenses incident to the process of supposed growth or appreciation"; and this they evidently did; for while the testimony of respondent, based upon calculations which supposed the most favorable outcome and took no accounts of "hazards," placed his damages at over twenty-five thousand dollars, the jury gave him only two thousand dollars. We have examined the case of *Rhodes* v. *Baird*, 16 Ohio St. 573, cited by appellant. That action was to recover damages for the breach of a covenant to make a lease of land for a term of years upon which a peach orchard was to be planted; and it was held that the measure of damages was the value of the lease. The contract was therefore essentially different

from the one in the case at bar. There are expressions in the opinion which are somewhat favorable to appellant's contention; but if it was there intended to hold that deprivation of future crops can in no instance be ground for damages, the case is, in that respect, not in accord with the current of authority.

In our opinion the court below did not commit error in admitting the said evidence objected to, or in instructing the jury upon that subject. Moreover, it is evident that the jury were not carried away by those exaggerated estimates of future profits and value which in such a case can be so readily figured with pencil and paper. The verdict was apparently the result of a fair consideration of the issues involved by reasonable men who were, probably, well informed about the subject matter of the suit. A verdict for a very large amount would, naturally, have aroused distrust; but if respondent was entitled to recover damages at all for the breach of this very important contract—and we have held that he is—it cannot be said that the amount awarded was in any sense excessive, or the result of any irrelevant or improper considerations.

We have considered the two main points made by appellant; and there are no others calling for special notice.

The judgment and order appealed from are affirmed.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.