[S. F. No. 791.   Department Two.—June 24, 1899.]

ESTRELLA VINEYARD COMPANY, Respondent, v. A. B. BUTLER and WILLIAM FORSYTH, Partners under the Style of RAISIN GROWERS' PACKING ASSOCIATION, Appellants.

ASSUMPSIT—SALE OF RAISINS UPON COMMISSION—PLEADING—ELECTION OF COUNTS.—In an action to recover the value of raisins delivered to the defendants as commission agents, in which the first count of the complaint alleges delivery of the raisins to the defendants under an express agreement to make returns at a fixed price, the second count is *in quantum valebat*, and the third count alleges an agreement to sell and deliver the raisins for a fixed price, the plaintiff cannot be compelled to elect between the counts.

ID.—AGREEMENT FOR FIXED RETURN—CONFLICTING EVIDENCE—SUPPORT OF VERDICT.—It is sufficient to support a verdict in favor of the plaintiff, as to the agreement alleged in the complaint, that plaintiff was to receive a fixed return for the raisins delivered, that the testimony for the plaintiff tends to sustain the allegation, notwithstanding conflicting evidence to the contrary.

ID.—EVIDENCE—WRITTEN CONTRACT BY AGENT IN HIS OWN NAME—PROOF OF AUTHORITY OR KNOWLEDGE REQUIRED.—A written contract with the defendants for the delivery of raisins, signed by one who was an agent for the plaintiff, in his own name, without any designation of agency, in the contract or in the signature, the authority for the execution of which was not proved, but disproved, is not admissible in evidence against the plaintiff, without such proof or without showing or offering to show that the

plaintiff delivered the raisins thereunder with actual or implied knowledge of its existence. It is not enough to show that defendants on their part received the raisins under such contract.

Id.—Quality of Raisins—Market Value.—Where the contract proved by the plaintiff called for the delivery of raisins of good quality in a particular market, without specifying the place where they were to be sold, evidence is admissible to show the quality of the raisins delivered, and their market value in that market.

Instructions—Refusal of Requests.—The court may properly refuse requested instructions which invade the province of the jury, or may mislead them, or which are covered by instructions given in the charge of the court.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. J. R. Webb, Judge.

The facts are stated in the opinion.

L. L. Cory, for Appellants.

George E. Church, and H. H. Welsh, for Respondent.

CHIPMAN, C.—Action to recover the value of 255,000 pounds of raisins, alleged to be worth $7,650, on account of which plaintiff had received only $4,090.82, leaving due the sum of $3,559.18. The cause was tried by the court with a jury, and plaintiff had a verdict for $2,840, upon which judgment was entered. The appeal is from the judgment and from an order denying motion for a new trial, and comes here on a statement of the case. The complaint sets forth three separate causes of action:

1. That between September 1, 1894, and January 1, 1895, at Fresno, California, plaintiff delivered to defendants the raisins in question, to be sold by defendants, as commission agents of plaintiff; and that defendants agreed, in consideration of said delivery, and prior thereto, that plaintiff would receive from defendants for the sale of said raisins a price not less than three cents per pound, and that defendants would account to plaintiff and pay plaintiff as the proceeds of said raisins a price not less than three cents per pound; 2. Alleges the delivery of the raisins at the request of defendants; that they afterward sold the same, and that the reasonable value thereof was $7,650,

no part of which has been paid except $4,090.82; 3. Alleges the delivery of the raisins to defendant upon an agreement that they would pay plaintiff three cents per pound therefor.

Defendants answered, specifically denying most of the material allegations of the complaint, but admitted the delivery of the raisins and alleged that they were so delivered "to be handled, marketed, and sold by said defendants upon commission, and as the agents and representatives of plaintiff, upon commission"; in an amended answer defendants set up a contract in writing, dated May 11, 1894, between one G. W. Taft and defendants, under which it is alleged that the raisins were delivered to defendants, and not otherwise. This contract provided, in brief, that defendants were to receive the raisins in the sweatbox, and pack and otherwise prepare them for market and sell them upon a commission of five per cent of the proceeds of this sale.

1. Defendants allege error in refusing their motion to compel plaintiff to elect. In the first count or cause of action plaintiff alleges delivery to defendants as commission agents under a specific agreement by defendants to make returns of proceeds at a given price; the second count is laid on *quantum valebat;* the third count alleges an agreement to sell and deliver for a given price. Plaintiff upon such complaint was not obliged to elect. (Code Civ. Proc., sec. 427; *Cowan v. Abbott,* 92 Cal. 100.)

2. It is claimed that "the evidence is insufficient to sustain the allegation that defendants agreed that plaintiff would receive from defendants three cents a pound for each pound of raisins delivered."

It appears from the testimony of Taft that he was the agent of plaintiff and disposed of the raisins for plaintiff. He testified that he spoke to William Forsyth, one of defendants, in May, 1894, about raising some money on plaintiff's crop, and was told that defendants would supply what money they wanted if defendants were allowed to handle the crop; witness replied: "I will give you a show at it if you will do as well by me as anybody. He says, 'All right; we will give you the $2,000 and take a crop mortgage on the crop'"; the crop mortgage was drawn and is dated May 14th, and witness sent it to plaintiff

company for execution, and it was executed and delivered and was recorded May 24th. He testified: "He [Forsyth] handed me some contracts for me to send to the company to be signed by the president and secretary. I sent them down to be signed, and they were signed and sent back to me. It was probably a week before they came back to me. After they came back from Bakersfield I kept them." This is a contract similar in form to that under which defendants claim they received and handled the raisins; it was executed by plaintiffs, but the evidence is that it was never delivered to defendants. This phase of the case will be noticed later on. Taft testified that after getting the money on the crop mortgage he did not see Mr. Forsyth until August. As to what then took place he testified: "I saw Mr. Forsyth, and we got to talking about the crop. He wanted to know how much there was going to be; wanted to know if he was going to handle it. I told him that he would handle it if he would get me just as much as I could get anywhere else, or a little better, and he promised me that he would do as well by me as anybody else, and a little better. . . . . He said he wanted the crop, knew it would be good, knew I understood curing, that it is a good large crop, and that he wanted it and would give me three cents, or see that I got three cents a pound and probably bettter. He said he had got to have the crop; had sold five hundred cars, and was depending on these large crops. I says, 'All right, Colonel; three cents is what I want, and that is what I am figuring on.' . . . . He says, 'All right, Taft, you go ahead.' I informed the company of the matter by letter. I subsequently saw the secretary of the company, probably a week or ten days after, and before the raisins were delivered." The deliveries began September 22d, and continued to October 1st, amounting to 255,000 pounds. The testimony of this witness was that the agreement was to take all the crop of good raisins, and that all that were delivered were of No. 1 quality; there was other evidence that the market price for similar raisins at Fresno ranged from two and one-half to three cents per pound. It was admitted that defendants had disposed of all the raisins, and the undenied allegation of the verified complaint is, that they had made returns of only $4,090.92. Defendant Forsyth testified that he made no such agreement as was testified to by

the witness Taft.   It is not within the province of the court to say which one of these witnesses the jury should have believed.   The evidence of plaintiff tends to sustain the allegations complained of.

3. Defendants offered in evidence the contract set forth in the answer, but the court excluded it, and defendants excepted and claim that the ruling was error.   As this evidence tended to show an entirely different agreement from any claimed to have been made by plaintiff, it becomes important to determine whether the court erred in refusing the evidence.

Defendant Forsyth testified as to the advance of $2,000, secured by mortgage, and, continuing, said: "At that time and place certainly there was something said about the execution of some papers by myself and Mr. Taft.   He was to indorse the Estrella Vineyard Company's note for $2,000 after he had signed the contract.   He went with me to the office of Butler and Forsyth and signed the contract that day.   [Paper handed witness.]   That is the contract Mr. Taft signed on the eleventh day of May.   That is George W. Taft's signature; I saw him sign it."   Plaintiff objected to the admission of the contract as irrelevant, immaterial, and incompetent, and on the further ground "that it purports to be an indenture of mutual covenants, and that it was not executed by the party defendant; that it has never been delivered."   The witness continued: "There must have been two papers signed at that time.   There is generally the duplicate and this one. · My signature, I presume, was on the other one, the signature of Butler and Forsyth. There were two papers.   I handed one to Mr. Taft and kept the other.   They were identical.   It was an oversight I didn't sign this paper before yesterday.   I didn't think it was necessary. I had Mr. Taft's signature on that document, and it was all I supposed was necessary."   The objection was then sustained, and defendants excepted.   This agreement is dated May. 11, 1894, and purports to be between George W. Taft, of the county of Fresno, and defendants; throughout the contract the party of the first part is Taft, and the conditions in terms are to be performed by him on the part of first party, and the agreement is signed G. W. Taft.   Forsyth further testified, without objection: "The contract under which I received those raisins is the

paper marked defendant's proposed exhibit No. 1 [the contract last referred to]. After the execution of that contract I never entered into or attempted to enter into any other contract with Mr. Taft in relation to the delivery of these raisins." Upon cross-examination of Forsyth, plaintiff handed him a contract dated May 16, 1894, in all particulars identical with that testified to by Forsyth, except that the party of the first part is plaintiff instead of Taft. Forsyth recognized his signature to the contract of May 16th, but was unable to remember anything about its execution; he testified that he had "forgotten all about it." As to the contract of May 16th, when asked where it had been since its execution, Taft testified: "Part of the time at my office and part of the time at Mr. Welsh's. It was never delivered to Butler and Forsyth, because I had instructions from the company at the time they sent it to me not to deliver it unless it was for the best possible means that I could do in the way of disposing of the raisins." He had already testified to the subsequent parol agreement of August.

Taft further testified: "If at any time during the month of May, June, or July, and before August 15th, I signed a raisin contract to the Raisin Growers' Packing Association, I had no authority to sign it from the company"; and in that connection said: "I spoke this morning of some papers having been drawn and sent down for execution to Bakersfield. They were contracts between Butler and Forsyth and the plaintiff corporation. That was a little after this chattel mortgage was sent down, I think, probably within a week." The mortgage was dated May 14th. Defendants' counsel claim that the contract was admissible because: 1. It appeared by its terms to be in duplicate; 2. Taft did not deny that he executed it; 3. Forsyth testified that he saw Taft sign it; 4. That Forsyth said he presumed that the signature of Butler and Forsyth was on the other copy; 5. Forsyth testified that defendants received the raisins under this contract. The general rule, subject to some exceptions, is that in order to bind the principal, and to make it his contract, the instrument must purport on its face to be the contract of the principal, and his name must be inserted in it and signed to it, and not merely the name of the agent, even though the latter be described as agent in the instrument; or

at least the terms of the instrument should clearly show that the principal is intended to be positively bound thereby, and that the agent acts plainly as his agent in executing it. (Story on Agency, sec. 147.) It is not necessary to point out the distinction made between instruments under seal and not under seal; nor to show what classes of instruments fall under the exceptions to the rule.. There was nothing on the face of the instrument to show that Taft was acting as agent of any person; no reference whatever is made to plaintiff as principal or otherwise, and no offer was made to prove that Taft was acting for plaintiff and with its authority in executing the contract. It was not enough to show that defendants received the raisins under this contract; it was necessary also to show or offer to show, before it was admissible to bind plaintiff, that the latter authorized Taft to make the contract or the plaintiff delivered the raisins to defendants with knowledge, actual or implied, that the contract was so entered into on its behalf. As an exception to the general rule as above stated, evidence is admitted, not to contradict the written instrument, or deny that it binds the person whom on its face it purports to bind, but to show that it also binds another, because the act of the agent in signing the agreement, in pursuance of his authority, is in law the act of the principal. (Story on Agency, sec. 160*a* and notes, and sec. 270 and notes.) The only written contract of which there is any evidence that plaintiff had knowledge, or signed, or authorized to be signed, was the contract of May 16th, and as to this contract the undisputed evidence is that it was never delivered by plaintiff, and defendants make no claim under it, and Taft testified that he had no authority to sign the contract of May 11th. We cannot say that the court erred in excluding the latter contract.

4. The trial court admitted evidence of the quality of the raisins under the first cause of action, and generally of their market value at Fresno, and these rulings are assigned as error. Taft testified that the agreement called for raisins of good quality, and we think it was competent to show that they were such. As to the evidence of market value at Fresno, we think it was admissible. The evidence tended to show that the raisins were sold in that market to be delivered at Fresno. Taft testified:

"I did not know what he was going to do with them [the raisins]; I did not know that they were to be shipped on consignment; couldn't tell whether to shop east, or where; . . . . I did not care what they done with them." There was evidence tending to show that there was a market value for raisins at Fresno, and several witnesses testified what that market value was. The evidence presents a different case from that of *Pugh v. Porter Brothers Co.*, 118 Cal. 628, relied upon by defendants, in which the raisins were sold to be marketted at Chicago.

5. The court instructed the jury on its own motion. Thereupon defendants submitted ten additional instructions, all of which the court refused to give, and this is assigned as error. Our attention is invited to the sixth, seventh, tenth, eleventh, fourteenth, and sixteenth. The instructions marked 7, 10, and 14 are clearly an invasion of the prerogative of the jury, being instructions upon questions of fact. The sixth gives the rule as to burden of proof, upon which the court fully instructed the jury. The eleventh instruction refers· to a contract under which the raisins are assumed to have been delivered, but it is impossible to say whether the contract referred to was the contract alleged by plaintiff or by defendant. As offered, the jury could not have been aided by the instruction and might have been misled. There is no point in the sixteenth instruction not covered by the instructions given quite as favorably as defendants could fairly ask. Indeed, we think the court erred, if at all, in giving instructions under which the jury could render a verdict (as it evidently did) for less than the contract testified to by Taft would have warranted.

It is advised that the judgment and order should be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.