[Civ. No. 1814. First Appellate District.—May 17, 1916.]

## WILLIAM T. GROSSE, Respondent, v. C. R. PETERSEN et al., Appellants.

CONTRACT—EXECUTION WITH REFERENCE TO SPECIAL CIRCUMSTANCES—MEASURE OF DAMAGES.—Where a contract is entered into by the parties thereto with reference to special circumstances known to both parties, the damages recoverable for a breach of the contract are not only those arising naturally therefrom and according to the usual course of business, but also those which under the special circumstances connected with the transaction flowed from the breach.

ID.—CONTRACT FOR MANUFACTURE OF SOAP—DAMAGES.—The measure of the plaintiff's damage for the defendants' willful and wrongful violation of a contract for the manufacture of soap according to a secret formula furnished by the former, is, where it is shown that the defendants had knowledge that the purpose of the plaintiff was to permanently establish a market for a soap of superior merit and value to be manufactured for him in exact accord with such formula, the difference between the plaintiff's actual expenditures in creating a market for the soap, including the value of his own services, and the sum received by him from the sales made of the soap delivered up to the time that the market which he had created had been destroyed in consequence of the breach of the contract; and, where it is also shown that such defendants had converted the secret ingredient to their own use, the value thereof is to be added to the damage.

ID.—EVIDENCE—EARNINGS OF PLAINTIFF.—In such an action it is not error to permit evidence of plaintiff's average earnings while employed by third parties in work similar in character and extent to the work which for some fourteen months he did in creating a market for his soap.

ID.—ACCEPTANCE OF INFERIOR SOAP—LACK OF WAIVER.—The breach of such a contract is not waived by the ordering and acceptance of

soap after the plaintiff had knowledge of some complaints as to the efficacy of the soap, where such complaints were few and of a vague character.

ID.—QUALITY OF SOAP—INSTRUCTION.—In such an action it is not misleading to instruct the jury that if it was found that the defendant failed to furnish the plaintiff with "a high extra number one soap same quality as Pioneer Soap Company's Medallion soap," such failure constituted a breach of contract, where the evidence was confusing as to whether the basic ingredients employed in the manufacture of the soap in question were in anywise inferior to the basic ingredients usually employed in the manufacture of Medallion soap.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   L. T. Price, judge presiding.

The facts are stated in the opinion of the court.

Frank Otis, Mastick & Partridge, and Alan C. Van Fleet, for Appellants.

Wm. M. Abbott, Wm. M. Cannon, and Paul C. Morf, for Respondent.

LENNON, P. J.—In this action the plaintiff sued to recover the sum of forty thousand dollars as damages for the breach of a contract.   Upon the verdict of a jury judgment was entered in plaintiff's favor in the sum of three thousand five hundred dollars.   The appeal is from the judgment, and from an order denying a new trial.

Briefly stated the facts are these: The defendants were engaged in the business of manufacturing soap.   The plaintiff was a soap expert and salesman, and for many years prior to the making of the contract in suit had been a successful dealer in soap and the Pacific Coast agent for soap manufacturers. Plaintiff was possessed of a secret formula for the manufacture of soap, containing an ingredient claimed by him to possess peculiar cleansing qualities, and the especial excellence of soap manufactured in accordance with his formula had been successfully demonstrated.   Plaintiff entered into a contract with the defendants for the manufacture at a stipulated price of a laundry soap, to be known as Wil-Gro soap, which was "to be a high extra number one soap same quality as

Pioneer Soap Company's (defendant) Medallion soap,''—
weighing from 5¾ to 7 ounces per bar when cured, and which
was to be made and mixed according to plaintiff's formula as
set out in the contract. The contract further covenanted that
the defendants would not use the plaintiff's secret ingredient
in the manufacture of any soap but that of the plaintiff.

The first count of the plaintiff's complaint alleged that he
had expended in payment to the defendants for soap delivered
to him under said contract, supposedly manufactured in ac-
cordance with his formula, the sum of $4,167.10; that he had
paid the sum of $3,344.33 for the secret ingredient which was
supplied to the defendants for the purpose of being used in
the manufacture of the soap, and the sum of $5,066 in the
creation of a market for the commodity when manufactured;
and then proceeded upon the theory that the plaintiff was
damaged in the aggregate of those sums by the defendants'
breach of the contract in furnishing an inferior soap not
manufactured as agreed, which rendered futile the expendi-
tures thus incurred.

The second count of the complaint fixed the plaintiff's dam-
age at five thousand dollars because of the defendants' unau-
thorized use of the plaintiff's secret ingredient in the manu-
facture of their own soap.

The third count of the complaint called for damages in the
sum of twenty-five thousand dollars, because of the alleged
injury to the plaintiff's business and reputation as a soap
dealer, and his diminished ability to make sales of his spe-
cialty.

The evidence adduced in support of the plaintiff's case
tended to show that upon the execution of the contract he
commenced to advertise and create a market for the soap to
be manufactured for him by the defendants. This he con-
tinued to do until some time in April, 1912. During this
time he ordered and received from the defendants approxi-
mately one hundred thousand pounds of soap supposedly made
and mixed in conformity with the formula specified in the
contract, for the manufacture of which he supplied to the
defendants 6,390 pounds of the secret ingredient, which was
15 pounds in excess of the quantity necessary to fill plaintiff's
orders if the soap had been manufactured according to the
formula contained in the contract. The defendants did not
manufacture this soap according to the agreed formula, but

used in such manufacture from 35 to 50 per cent only of the proportion of secret ingredient specified therein. They diverted large quantities of this ingredient to their own use, employing it in the manufacture of their own soap, and also retained in their possession after the completion of the plaintiff's orders about one thousand pounds thereof. The soap when received by the plaintiff was wrapped and boxed, and the plaintiff sold and shipped the same to his customers in the original packages, disposing during a portion of the year 1912 of some eighty-eight thousand pounds. Occasionally a customer of the plaintiff found fault with the soap upon the ground that it did not do the work claimed for it; but the plaintiff, knowing the efficacy of the soap when made according to his formula, and having implicit confidence in the business ability and integrity of the defendants, gave but little heed to the few complaints thus made until something like a year after the execution of the contract, when he discovered the fact above mentioned, that the defendants had employed in the manufacture of the soap a smaller proportion of the secret ingredient than specified in the formula. Thereupon the plaintiff ceased selling the article as Wil-Gro soap, disposing of it as ordinary soap at a reduced price, and still had on hand unsold a considerable quantity thereof.

The principal point urged in support of the appeal is that the evidence is insufficient to support the finding of the jury implied by the verdict that the plaintiff was damaged by the defendants' alleged breach of the contract in the sum of three thousand five hundred dollars, or any other sum.

Much of the briefs of the respective counsel is devoted to a discussion of the measure of damages; but upon that subject, and the sufficiency of the evidence to support the verdict, it will suffice to say that upon the whole the evidence shows that the contract in controversy was entered into by the parties thereto with reference to special circumstances known to both parties, and therefore the damages recoverable for a breach of the contract are not only those arising naturally therefrom and according to the usual course of business, but also those which under the special circumstances connected with the transaction flowed from the breach. (*McDonald* v. *Kansas City Bolt etc. Co.,* 149 Fed. 360, 365, [8 L. R. A. (N. S.) 1110, 79 C. C. A. 298] ; *Perry Tie & Lumber Co.* v. *Reynolds,* 100 Va. 264, [40 S. E. 920] ; 3 Elliott on Contracts, sec. 2131.)

In the present case the circumstances surrounding and attending the making of the contract, which to an extent make and measure the damage suffered by the plaintiff for the undoubted breach of the contract, are briefly stated these: The contract was entered into between plaintiff and defendants with the purpose on the part of the plaintiff—which purpose was apparently known to the defendants—of permanently establishing a market for a soap of superior merit and value, which was to be manufactured for the plaintiff in exact accord with the formula specified in the contract. Upon the faith of the contract entered into the plaintiff expended much time, effort, and money in successfully creating a market for his soap, which presumably and evidently was intended to be of a permanent nature rather than a mere temporary expedient for the making of an immediate profit from the sale of the first lots of soap manufactured.

Under the rule stated, the measure of the plaintiff's damage for the defendants' willful and wrongful violation of the contract would, ordinarily and under the special circumstances narrated, be at the very least the difference between his actual expenditures, including the value of his own services, which he had been induced to make on the faith of the contract, and the sum received by him from the sales made of the soap delivered up to the time that the market which he had created had been destroyed in consequence of the defendants' breach of the contract. (*Cederberg* v. *Robison,* 100 Cal. 93, [34 Pac. 625]; *United States* v. *Behan,* 110 U. S. 338, [28 L. Ed. 168, 4 Sup. Ct. Rep. 81].) In the pursuit and accomplishment of his design, and the apparent purpose of the contract, the evidence shows that the plaintiff, upon the faith of the contract, expended in the aggregate the sum of $10,577; and that prior to the decline and final destruction of the market which he had created for Wil-Gro soap he had received from the sales of the soap manufactured and delivered to him by the defendants the sum of $6,942. The actual loss to him, therefore, in this aspect of the case was the sum of $3,635; and in estimating his damage there must be added to this the further sum of $675, the value of the secret ingredient wrongfully converted by the defendants to their own use. It will thus be seen that the evidence not only supports the verdict, but that the aggregate of the plaintiff's actual loss resulting from the defend-

ants' breach of the contract was much in excess of the sum
awarded to him by the jury.

The trial court did not err in its ruling permitting evidence
of plaintiff's average earnings, while employed by third par-
ties, in work similar in character and extent to the work which
for some fourteen months he did in creating a market for his
Wil-Gro soap. Of course, the amount of such earnings in
themselves did not fix the value of the plaintiff's time and
labor expended upon the faith of the contract in controversy,
but it was some evidence of the value of the plaintiff's services,
and was therefore admissible for the purpose of assisting the
jury in fixing the value of the same (1 Sedgwick on Damages,
9th ed., sec. 265).

We are not impressed with the point that the plaintiff
waived the breach complained of, and the damages resulting
therefrom, because he ordered and accepted soap from the
defendants after he had heard some complaints from his cus-
tomers that "it would not do the work." These complaints
were, apparently, few and far between, and it was not until
a year and more after the completion of the contract that he
was positively and definitely informed that the defendants
were not manufacturing the soap in accordance with the
agreed formula. Even if the soap had been manufactured
strictly according to the formula, it is not unlikely that there
would have been some slight complaint that at times it did not
fully measure up to the representations made for it; and a
few vague complaints made of the soap delivered to the plain-
tiff were not in our opinion sufficient as a matter of law to
charge the plaintiff with knowledge of the breach of the
contract, and thereby operate to transform his subsequent
acceptance of the soap into a waiver of the original terms of
the contract.

The trial court, among other things, in effect instructed the
jury that if it was found that the defendants failed to furnish
the plaintiff with "a high grade extra number one soap same
quality as Pioneer Soap Company's Medallion soap," such
failure constituted a breach of the contract; and it is now
insisted that there is no evidence that the basic ingredients
employed in the manufacture of the plaintiff's Wil-Gro soap
were in anywise inferior to the basic ingredients usually em-
ployed in the manufacture of Medallion soap, and that there-

fore the tendency of the instruction in question was to mislead the jury, and was consequently prejudicially erroneous.

While the evidence upon this phase of the case is more or less confusing, there was some evidence that ''there was a fixed formula for the Medallion soap'' which was varied from in the manufacture of the ''Medallion soap'' which was employed as a basis for the manufacture of the plaintiff's Wil-Gro soap. True, it was the claim of witnesses for the defendants that the variation from the formula for the manufacture of Medallion soap was an immaterial one, which did not injuriously affect its quality and value as a base for the manufacture of the plaintiff's soap; but, upon the other hand, there is evidence to be found in the record tending to show that ''Medallion soap'' was not a number one piece of soap because the ingredients which went into it consisted in part of ''grease, a cheap grade of resin not the best, and instead of the soap getting two washes like the ordinary soap it was only put through one. It wasn't cleansed properly, and it was finished very poorly.'' It is not entirely clear to us whether the latter testimony had reference to the Medallion soap ordinarily manufactured by the defendants according to the formula fixed therefor, or was intended to apply to the ''Medallion soap'' which was especially used as a base for the manufacture of the plaintiff's soap. In the presence of this uncertainty in the evidence we are not prepared to say that the question, as to whether or not the defendants had complied with the contract in the particular stated in the instruction complained of was improperly submitted to the jury.

The remaining points urged in support of the appeal are more or less involved in those previously discussed; they have therefore in effect been disposed of and need not be now adverted to.

The judgment and order appealed from are affirmed.

Kerrigan, J., and Richards, J., concurred.

. A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 13, 1916.