[Civ. No. 10438. First Appellate District, Division One.—July 12, 1937.]

AUGUSTA CASPARY, Respondent, v. MAY M. MOORE et al., Defendants; MERLE NORMAN, Appellant.

Fred W. Byrd for Appellant.

Keyes & Erskine, Roland J. White and William F. White for Respondent.

THE COURT.—An appeal from a judgment recovered as damages for a breach of a written contract. The judgment was entered against Merle Norman, who has appealed, and in favor of Augusta Caspary. The questions presented are whether appellant and respondent were parties to the contract, or the evidence supports the award.

Appellant was engaged, under the name of Merle Norman Co., in the manufacture and sale of cosmetics, which were sold in connection with a method of facial treatments devised by her and known as the Merle Norman Cosmetic Treatments. On November 28, 1933, she made a written agreement with defendant Moore, of which the following are the material provisions:

"May M. Moore

"Be advised I hereby extend to you the exclusive agency rights for my complexion treatment and cosmetics in the city and county of San Francisco for a period of 12 months from date, after which if volume of business warrants these rights shall be extended for a period to be mutually agreed upon. It is understood what is known as the Richmond district in above city is reserved. Agency rights herein mentioned are designed to mean the establishment of Merle Norman studios, or systematic canvassing campaign."

The writing further fixed the prices she would charge for cosmetics to be used by Moore. On September 5, 1934, the term of the original agreement was extended in writing for a period of twelve months from that date, the writing

containing additional details as to prices of materials and terms of sale thereof.

On August 29, 1934, Moore, as first party, entered into a written agreement in which Lilian Albrecht (who was the mother of respondent) was named as second party. It recited that Moore was appellant's representative and the owner of certain territory, including San Francisco; second party agreed to establish and maintain branch stores or studios where the Norman Company treatment should be demonstrated and the cosmetics used. Second party paid Moore for the first order of materials, it being provided that "thereafter such orders for supplies and materials shall be ordered and paid direct to the Merle Norman Company Laboratories", the prices therefor to be established by the Norman Company less certain discounts. It was also agreed that the studios to be established by second party should be advertised as the Merle Norman Studios, and all cosmetics and treatments sold and demonstrated as the Norman method. The term of this agreement was one and one-half years, and according to the testimony it was agreed that in making the same Albrecht was acting for respondent, who was the real party in interest.

Respondent, following this, terminated a partnership relation with another, leased certain premises in San Francisco and established a studio therein. She purchased materials from appellant from time to time, and correspondence passed between them in which appellant referred to her representatives in San Francisco, stating, however, that she did not "welcome the subagency plan such as now exists in the bay district because it reduces the margin of profit". In other communications expressions were used supporting the inference that respondent was recognized as appellant's agent. On one occasion these parties met, and according to the testimony respondent was introduced by Moore as the person who "is going to have our product and represent us in San Francisco and who has our contract. . . . " Respondent at this time said, "I am the Miss Caspary who has your contract for cosmetics," and appellant replied: "I want to congratulate you, Miss Caspary, for being with us."

The evidence shows that respondent expended sums in fitting up a place of business, and became obligated for rent, advertising and other expenses. Before the expiration of the

term fixed appellant, claiming that respondent had not complied with certain rules respecting demonstrations and use of materials, refused further supplies, and the suit followed.

The evidence shows sufficiently that respondent was a party to the agreement, and oral testimony to show the fact was competent. (*Estrella Vineyard Co.* v. *Butler*, 125 Cal. 232 [57 Pac. 980]; *Niles* v. *Gonzales*, 1 Cal. App. 324 [82 Pac. 212].) Nor does the fact that the principal is known to a third person at the time he contracts with an agent prevent the third person from holding the principal liable if the circumstances or the terms of the contract show that it was the intention to contract with the principal. (*Pacific Ready-Cut Homes, Inc.*, v. *Seeber*, 205 Cal. 690 [272 Pac. 579]; *Milonas* v. *Sarantitis*, 109 Cal. App. 343 [292 Pac. 978].) And where such intention is disclosed by the contract, or the writing leaves the matter in doubt, parol evidence is admissible to determine whose contract it is, even if the instrument is sufficiently clear to bind the agent. (1 Cal. Jur., Agency, sec. 114, p. 833; *Southern Pac. Co.* v. *Von Schmidt etc. Co.*, 118 Cal. 368 [50 Pac. 650]; *Rummelsburg* v. *McDonald*, 66 Cal. App. 380 [226 Pac. 412].) The writings in evidence with the testimony—which the court believed—fairly support the conclusion that Moore was authorized to make the contract in question. Moreover, the construction of it given by the court appears consistent with the true intent of the parties; and where this is the case an appellate court will not substitute another, though equally tenable, interpretation. (*Kautz* v. *Zurich etc. Ins. Co.*, 212 Cal. 576 [300 Pac. 34].)

There is no merit in appellant's contention that the contract was lacking in mutuality. Here respondent was bound to do certain acts, which she performed. If appellant's obligation was in the beginning conditional thereon, such performance furnished sufficient consideration. (6 Cal. Jur., Contracts, sec. 140, p. 213.) Nor, as claimed, was the contract one merely for the sale of goods, or so uncertain as to make it unenforceable.

It is also urged that respondent failed to make payment or tender of performance; but the evidence shows, as found by the court, that appellant for no valid reason refused to furnish the materials required by respondent. In the circumstances no offer was necessary (Civ. Code, sec. 1440); and respondent at her election was entitled to sue

for her damage. (*Alderson* v. *Houston,* 154 Cal. 1 [96 Pac. 884]; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]; *California etc. Growers* v. *Harris,* 91 Cal. App. 654 [267 Pac. 572]; *Williams* v. *Schalk Chemical Co.,* 11 Cal. App. (2d) 396 [53 Pac. (2d) 1015].)

■ On the question of respondent's alleged failure to abide by appellant's rules as to the conduct of the studio and advertising, the testimony was conflicting, and the finding against appellant cannot be disturbed.

■ On the issue of the damage suffered by respondent, it is the rule that where one party to an established business association fails and refuses to carry out the terms of the agreement, and thereby deprives the other party of the opportunity to make good in the business, the former becomes liable in damages suffered as the natural result of the default (*Overstreet* v. *Merritt,* 186 Cal. 494 [200 Pac. 11]; *Shoemaker* v. *Acker,* 116 Cal. 239 [48 Pac. 62]); and the recovery may include not only the amounts which the latter was reasonably induced to spend on the faith of the contract in preparing to perform it (*Blair* v. *Brownstone Oil Co.,* 35 Cal. App. 394 [170 Pac. 160]; *Cederberg* v. *Robison,* 100 Cal. 93 [34 Pac. 625]), but also such prospective profits the loss of which is the natural and direct consequence of the breach (*Shoemaker* v. *Acker, supra; Sobelman* v. *Maier,* 203 Cal. 1 [262 Pac. 1087]), and for the latter purpose evidence of profits, both past and present, is admissible as a basis for determining the compensation to which he is entitled. (*Western Union Tel. Co.* v. *Commercial Pac. etc. Co.,* 177 Cal. 577 [171 Pac. 317]; *Schumann* v. *Karrer,* 184 Cal. 50 [192 Pac. 849]; *Grosse* v. *Petersen,* 30 Cal. App. 482 [158 Pac. 511]; *Hacker Pipe & Supply Co.* v. *Chapman Valve etc. Co.,* 17 Cal. App. (2d) 265 [61 Pac. (2d) 944].)

■ Nor can the party in default escape liability from the fact that it is difficult to correctly measure the damage. (*Shoemaker* v. *Acker, supra; Seymour* v. *Oelrichs, supra.*)

The contract was to continue for one and one-half years, and gave respondent the option to renew it for a like period, provided she had kept and performed its terms. The evidence shows, and the court found, that respondent following its execution expended the sum of $1,306.41 in fitting up a studio and for signs, advertising and soliciting. The court also awarded $5,303.59 for the loss of profits, a total award of $6,610. The latter portion of the award was partially

based upon the assumption that respondent would have exercised the option to renew or extend the contract; but we fail to find in the record any allegation or evidence that such was her intention, or that she would have been able, ready or willing to do so. As held in the cases cited, such an award must be predicated on something more than mere possibilities; otherwise the loss claimed is of too uncertain character to constitute a basis for the computation of damages; and we feel compelled to hold that the award in so far as it includes the optional period cannot be sustained.

The substantial evidence as to profits was confined to a period of approximately six weeks, which, according to respondent, were $40 per week gross, and which if continued would have aggregated $3,120 for the original term of the contract. While she believed that they would have increased to $100 per week, the above was the only evidence sufficiently tangible to support a finding. In this connection also it is undisputed that respondent would have been obligated to pay $630 as rent for the studio annually, a total of $946 for the term, leaving a net profit for this period of $2,174. This sum, with the amounts expended by her as found by the trial court—a total of $3,480.41—constitutes the damage reasonably shown by the evidence and the amount which should have been awarded. With these exceptions all the findings are fairly supported, and no other error appears.

The judgment is accordingly modified by striking therefrom the sum of $3,129.59, and as so modified is affirmed. It is further ordered that each party bear her own costs of appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 11, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 7, 1937.