[L. A. No. 3245.   Department Two.—March 25, 1914.]

## M. FRANKLIN KLINE, Respondent, v. GUARANTY OIL COMPANY (a Corporation), Appellant.

OIL LEASE—BREACH BY LESSOR—ACTION FOR DAMAGES BY LESSEE—PARTIES AFTER ASSIGNMENT.—In this action by a lessee of oil property to recover his damages for a breach of the lease, consisting of the expense incurred in the examination of title, the drawing of papers necessary to the performance of the contract, and the preparation to enter upon the premises, the lessee is held to be the proper party plaintiff, although he had assigned the lease, but the defendant, with knowledge of the assignment, failed to raise the question, by demurrer or otherwise, of the right of the lessee to sue, and allowed the case to be tried on the theory that the plaintiff was entitled to sue if any one was.

ID.—CHARACTER OF LEASE — WHETHER CONFERRED MERE RIGHT TO SEARCH FOR OIL.—The contract in such case whereby the lessor "leased and let" to the lessee the oil lands in question was not

simply an "oil lease" merely intended as a permission to enter upon the premises for the purpose of prosecuting a search for oil and other minerals, but it purported to be a conveyance of a present leasehold estate, as well as of a right to extract oil and other minerals from the land itself. Therefore the discovery of oil was not a prerequisite to the existence of the cause of action.

ID.—FAILURE TO DELIVER POSSESSION—NECESSITY OF EVICTION BEFORE ACTION.—In this action by the lessee for breach of such contract it was not necessary to show an eviction, if possession had not been delivered to him. One who has never been in possession of demised premises cannot be evicted.

ID.—MEASURE OF DAMAGES WHERE LESSOR KNEW HE COULD NOT PERFORM AGREEMENT.—If it appears in such action that the defendant, being in default in its contract with the owner of the legal title, agreed to lease the property in question to the plaintiff upon conditions which required of the plaintiff the expenditure of money, and that the defendant acted in bad faith, knowing the impossibility of performance on its part, the damages recoverable are those which would ordinarily and proximately follow from the breach of such a contract under the peculiar circumstances known to both parties.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Walter V. Dysert, for Appellant.

Collier & Clark and Arthur J. Abbott, for Respondent.

MELVIN, J.—The defendant appeals from a judgment in favor of plaintiff for $2,769.65 and also from an order denying a motion for a new trial. The business relations between the parties grew out of certain transactions culminating in a lease to plaintiff by defendant of certain supposedly oil-bearing property and the damages demanded were for an alleged violation of said contract. The agreement dated February 4, 1911, recited that for and in consideration of a nominal sum paid and the further consideration of mutual covenants and agreements contained in the instrument, the Guaranty Oil Company, a corporation, did thereby let to Kline "the north half (N. ½) of the northeast quarter (N. E. ¼) of the southeast quarter (S. E. ¼) of section 31, all in township (32)

thirty-two south, range (24) twenty-four east, Mt. Diablo Base and Meridian, lying and being in the county of Kern, state of California, and containing forty (40) acres of land, more or less.'' There was also a grant to plaintiff of the exclusive right to sink shafts, to drill wells, and to extract any and all kinds of minerals, especially petroleum, from the land. The term of the lease was twenty years except as limited therein. The lessee agreed to incorporate a company for the operation and development of the leased property with capital stock of one million shares of the par value of one dollar each, and promised to deliver to the Guaranty Oil Company two hundred and fifty thousand shares of such stock before the commencement of active operations on the property. Kline further agreed by the terms of the contract to commence active work of boring for oil not later than April 1, 1911, and to prosecute his labors diligently, the agreement specifying the number of wells to be bored within a certain period if oil should be found in paying quantities. There was also a covenant on the part of the lessee to defend against liens and suits against the property and to pay all taxes or assessments levied or assessed on the improvements thereon. There was a covenant for the payment of rental or royalty from the minerals produced on the land and elaborate provisions for the disposal of the casings, tools, and other property which might be on the land at any time when plaintiff might choose to abandon the lease. The court found that the contract was made and ratified by defendant as pleaded; that as a part of the consideration for the execution and delivery to plaintiff of the said lease and at the same time, plaintiff paid to defendant the sum of one thousand dollars; that in examining title to the land described in the contract and in preparing to enter upon it plaintiff incurred an additional expense of $1,269.65, including the time necessarily consumed by him in such preparations, which was found to be reasonably worth five hundred dollars. The language of the court on this subject was in part as follows: ''Defendant at all times knew that plaintiff's time was reasonably worth the sum of five hundred dollars as aforesaid, and that plaintiff would necessarily and reasonably incur an expense in examination of said title, and in preparing the papers necessary to the performance of said contract, and in preparing to enter upon said premises, in

the sum of $1,269.65, as aforesaid.'' There was a finding that
on the fourth day of February, 1911, defendant was not and
never had been the owner of the lands described in the con-
tract nor entitled to the possession thereof, and at all times
was unable to perform and had not performed the covenants
of said agreement; that the Lucky Boy Oil Company, a corpo-
ration, was the sole owner of the property; that the only
interest defendant ever had in the premises was under a con-
tract of purchase between said Lucky Boy Oil Company and
R. L. Cox, defendant's assignor; that defendant had defaulted
in the payment of the purchase price of the property; that
the Lucky Boy Oil Company never consented that defendant
or any assignee should enter into possession of said premises,
''and had no knowledge of said defendant, or any of its as-
signees, lessees, or agents entering into possession thereof, and
had no knowledge of any lease to any part of said premises
having been made by said defendant, until after the 18th day
of April, 1911, and that said Lucky Boy Oil Company never
ratified or acquiesced in, or consented to any lease or contract
made by said defendant, and purporting to convey or transfer
any interest in said premises or any part thereof.'' The
court also found that the defendant acted in bad faith and
knew at all times that it had no title or right of possession
of any sort to the land in question; that the plaintiff did not
learn these facts until after the expenditure of the moneys
paid and the incurring of the damages pleaded; and that the
said plaintiff was at all times ready and willing to perform
the obligations of the contract. There were findings also that
plaintiff organized a corporation as provided by the terms
of the contract, assigned his lease to it and did all that he
agreed to do, including the delivery to the defendant of two
hundred and fifty thousand shares of the capital stock of the
corporation which he had so organized, but that defendant
failed when the time came for delivery of the property, to
place either plaintiff or his assignee in possession thereof,
which default on defendant's part prevented the corporation
to which plaintiff had assigned his contract from beginning
active drilling operations. There was a finding that prior to
the commencement of the action there had been an abandon-
ment of the lease and the plaintiff's assignment thereof to it

on the part of the corporation which had been plaintiff's assignee.

The first objection urged by appellant to the judgment is that plaintiff was not the proper party to institute the suit because he had assigned the lease before the commencement of the suit.   Undoubtedly a defendant is entitled to have an action commenced in the name of the real party in interest. (Code Civ. Proc., sec. 367.)   While it is true that plaintiff assigned his lease to one William B. Randall on March 20, 1911, it is also the fact that it was immediately re-assigned to the New York & California Petroleum Company.   There was a default clause in the assignment to Randall, providing that if he or his assigns failed to commence active operations upon the land ten days before April 1, 1911, Kline would be at liberty to enter thereon, record the statement of that fact and that thereby the assignment would terminate.   There was evidence that the officers of the New York & California Petroleum Company learning of the infirmity of the defendant's pretended title did not commence work ten days prior to April 1, 1911.   On March 28, 1911, Kline filed a notice of intention to hold the property, stating therein that he had entered into actual possession.   It is evident that he still entertained the hope of inducing the New York & California Petroleum Company to go on with the work, for on March 30th he obtained a written guaranty from the defendant and R. L. Cox that they would protect ''M. Franklin Kline and his associates, the New York & California Petroleum Company in the peaceable possession of the 40 acres of land leased to them.''   This shows that the Guaranty Oil Company recognized Kline as at least *one* of the real parties in interest.   He failed in his efforts to get the officers of the company which he had formed to take the property on the strength of the guaranty.   The case was evidently tried upon the theory that the plaintiff was entitled to sue if any one was.   Defendant was a stockholder in the company organized by Kline and knew of the assignment to said company, yet the right of plaintiff to appear was not raised by demurrer or otherwise. It is therefore not material whether or not the declaration of intention to hold the property under the lease operated to terminate the interest of the New York & California Petroleum Company.   It is contended that the expenses incurred

in examining the title to the property and for incorporating the company which plaintiff organized were obligations of that corporation and not of the respondent, and that judgment in favor of Kline is no bar to a future action by the New York & California Petroleum Company. The record however shows that the respondent was the legal obligor for all debts incurred including the fee of the attorneys who arranged for the incorporation of the new company. The trial court properly held, therefore, that the plaintiff was the real party in interest.

Appellant insists that the contract between the parties to this action was not a lease of the land but merely an "oil lease" which did not purport to confer any title, but merely was intended as a permission to enter upon the premises for the purpose of prosecuting a search for oil and other minerals, (citing *Payne* v. *Neuval*, 155 Cal. 47, [99 Pac. 476]; *Brookshire Oil Co.* v. *Casmalia Oil Co.*, 156 Cal. 213, [103 Pac. 927]). In both of those cases the court was considering leases granting a mere right to extract petroleum and other minerals. The lease by defendant to plaintiff purported to be a conveyance of a present leasehold estate, as well as of a right to extract oil and other minerals from the land itself. It was not one of those ordinary oil and gas leases whereby the lessor remains in possession and control of the land itself, giving the mere right of entry to the lessee when he shall begin the prosecution of the search for oil. By the terms of the agreement the defendant did *"lease and let"* to Kline the forty acres described. The lease contained this language: "And the said lessee agrees to pay all taxes or assessments levied or assessed on the improvements on said land, and upon the said oil wells, or any of them, and *upon said land itself."* The lessor reserved the easements of free entry for inspection and certain rights of way over the land, thus evidencing the intention to grant a leasehold interest in the land itself. It is therefore evident that the discovery of oil was not a prerequisite to the existence of a cause of action.

Appellant contends that this is in its essence an action for breach of covenant for quiet enjoyment and that such an action may not be maintained without a showing of an eviction. The respondent admits that, generally speaking, the

rule is that announced by appellant, but it does not apply to those cases in which there was not delivery of possession. The complaint alleges that the appellant never was entitled to possession of the property and never delivered possession thereof to respondent. The evidence shows that the contract between the Lucky Boy Oil Company and R. L. Cox which was assigned to the Guaranty Oil Company and was the only possible basis of a claim of a right of possession existing in the latter, contained this provision:

"That when said Cox shall have paid hereunder one hundred thousand (100,000) dollars of the entire purchase price of said land with interest thereon, he may enter into possession of said premises, but not otherwise."

It was further shown that only about twenty thousand dollars principal and interest had been paid on that contract and therefore, according to respondent's contention, the court was justified in finding that the Guaranty Oil Company never was entitled to possession and could not and did not deliver possession to the respondent. But appellant argues that by his recordation of intention to hold the land in question the respondent admitted his possession of the property and that therefore he cannot now be heard to deny it. Attention is also called to the fact that respondent testified as follows: "What do you call entering into possession? It is a matter of record in Bakersfield that I had entered on the premises and taken possession of them in accordance with the lease that I had with the Guaranty Oil Company. That was recorded in Bakersfield." . . .

"Q. Then the New York & California Petroleum Company did assume possession of it before April 1, 1911?

"Mr. Clark—We object to that as being argumentative.

"The Court—Answer the question.

"Mr. Clark—It also calls for a conclusion of law.

"The Court—Objection overruled. That is, took physical possession?

"Mr. Pruitt—Yes. Is that true or false, that statement made by you in the minutes there? A. It is true I entered into possession of the property."

Earlier in the examination of the witness the following question had been propounded and the appended answer had been given:

"I will read you, Mr. Kline, from page 41 of the minute book of the New York & Consolidated Petroleum Company at a meeting on the 5th day of April, 1911: 'Mr. Kline further reported that on behalf of the company he had entered into possession of the property of the lessee, and commenced the actual work of drilling for oil before April first, in accordance with the terms of the lease, and had filed statement of his entry in the office of the county clerk of Kern County at Bakersfield.' That is correct, is it, Mr. Kline? A. Perfectly correct."

In view of these solemn declarations, the court should have viewed and doubtless did scrutinize the statements of the witness with great care. The testimony given at the trial, however, was to the effect that while Mr. Kline went upon the property with an oil driller to get an estimate of the probable cost of the work, he never exercised any dominion over it or did anything in the way of asserting a right to possess it physically. In view of this conflict we cannot say that the court was in error in finding that he had never been placed in possession by defendant. One who has never been in possession of demised premises cannot be evicted. (Tiffany on Landlord and Tenant, p. 1268.)

Finally it is contended that the court below erroneously adopted the measure of damages contemplated by section 3306 of the Civil Code instead of that prescribed in section 3304 of the same code. It really makes little difference whether we regard this action as founded in part on breach of the covenant of peaceable possession or upon a violation of an agreement to convey an estate in real property. The element of bad faith would clothe a court, upon plain principles, with the power to fix damages according to the detriment shown by the existing special circumstances of the case. The court found that the defendant being in default in its contract with the owner of the legal title, agreed to lease the property in question to plaintiff upon conditions which required of him the expenditure of money in the organization of a corporation, and that defendant acted in bad faith, knowing the impossibility of performance on its part. The damages, therefore, would be those which would ordinarily and proximately follow from the breach of such a contract under the peculiar circumstances which were known to both parties. (*Haw-*

*thorne* v. *Siegel,* 88 Cal. 162, [22 Am. St. Rep. 291, 25 Pac. 1114].)

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.