[Civ. No. 12136.   First Dist., Div. One.   Apr. 26, 1943.]

R. H. ELSBACH, Respondent, v. WALTER J. MULLIGAN, Defendant and Appellant; HERMAN ELS-

BACH & SONS, INC. (a Corporation), Cross-Complainant and Appellant.

Brobeck, Phleger & Harrison for Defendant and Appellant.

Milton Marks, Heller, Ehrman, White & McAuliffe and Morris Lowenthal for Cross-Complainant and Appellant and for Respondent.

WARD, J.—R. H. Elsbach individually filed an action (superior court No. 272,578) against Walter J. Mulligan, individually and doing business under the firm name and style of W. J. Mulligan & Co., praying that the exclusive agencies formerly held by the parties in the name of Herman Elsbach & Sons, Inc. for the importation, distribution and the sale of wine and liquors be adjudged to be held in trust by the defendant for the use and benefit of plaintiff and defendant, and that plaintiff recover from defendant Mulligan damages for breach of their contract of joint adventure. Defendant answered in each capacity, admitting or denying various paragraphs of the complaint, and alleging that plaintiff's activities described in the complaint arose in connection with

his duties as an official of Herman Elsbach & Sons, Inc., a corporation. Thereupon, plaintiff, as vice-president of such corporation, filed a cross-complaint, in terms practically the same as his original and amended complaints on behalf of himself individually, except that in lieu of demanding damages for himself it was prayed that they be awarded to the corporation. Mulligan answered this cross-complaint individually and on behalf of the Mulligan company. In the meantime he filed an action in the municipal court upon an open book account against the Elsbach corporation, which was answered and to which a counterclaim was filed. This action was transferred to the superior court under No. 280,212 and the two actions were consolidated for trial.

In action No. 272,578 judgment was entered in favor of R. H. Elsbach and against Mulligan individually and doing business under the name and style of W. J. Mulligan & Co. in the sum of $30,000, the corporation to take nothing by its cross-complaint. No trust was imposed. In action No. 280,212 Mulligan recovered a judgment against the corporation in the amount as prayed with interest, and that the corporation take nothing by its counterclaim.

There is an appeal by defendant from that part of the judgment (action No. 272,578) whereby Elsbach individually was awarded damages, and an appeal by the corporation cross-complainant from that part in favor of Mulligan. The latter appeal appears to be merely precautionary as will appear later. There is no appeal from the judgment rendered in action No. 280,212.

The primary difference in the two appeals is the question whether damages should be awarded to Elsbach individually or in favor of the corporation. This narrows the appeal to two major issues. Is the evidence sufficient to uphold the findings of actionable wrongdoing on the part of Mulligan? If so, is Elsbach entitled to a personal recovery or should recovery be confined to the corporation?

The findings contain much historical background, issues raised by the pleadings and evidentiary matter, both oral and documentary. For clarity we quote rather extensively from them at this time as follows: ''Prior to the month of February, 1933, plaintiff, anticipating the repeal of the Eighteenth Amendment to the Constitution of the United States and of national and state prohibition acts, conceived the idea

or plan of acquiring exclusive agencies from foreign manufacturers of wines and liquors and building up in the Western States and elsewhere a valuable business in the importation, distribution, and sale of such wines and liquors. In furtherance of said idea or plan plaintiff [Elsbach] initiated and carried on correspondence with various and numerous foreign manufacturers of wines and liquors, including G. H. Mumm & Co., and continued such correspondence with said manufacturers for the purpose of obtaining from them exclusive agencies as aforesaid. Subsequently, during or about the month of February, 1933, defendant, Walter J. Mulligan, was introduced and recommended to plaintiff as a person then engaged in the importing and exporting business, other than the importation and exportation of wines and liquors, and shortly thereafter, defendant, Walter J. Mulligan, became interested in plaintiff's plan, with the result that plaintiff and defendant, Walter J. Mulligan, agreed to become and did become associated in plaintiff's proposed plan and entered into an agreement of joint enterprise, undertaking and adventure. At the time of entering into the agreement between plaintiff and defendant, Walter J. Mulligan, for the establishment of said joint enterprise, undertaking and adventure, defendant Mulligan stated that he did not wish to have his own name used in connection with the enterprise and it was agreed that the enterprise would be carried on in the plaintiff's family business name and plaintiff agreed that he would make available for their mutual benefit all correspondence and data relating to plaintiff's idea and plan for acquiring the said exclusive agencies, including correspondence and data relating to the said correspondence with G. H. Mumm & Co. and it was further agreed by plaintiff that he would supply funds and credit and devote his efforts, knowledge and business experience to the joint adventure and in the acquisition, development and retention of said exclusive agencies and it was agreed by plaintiff and said defendant that defendant Walter J. Mulligan would be 'boss' and defendant Walter J. Mulligan agreed and promised to cooperate fully with plaintiff and agreed and promised to exercise his best efforts, knowledge, experience and labors toward the acquisition, development and retention of said exclusive agencies, for the equal and mutual benefit and advantage of plaintiff and defendant Walter J. Mulligan. Defendant, Walter J. Mulligan, at said time further promised and agreed that he would co-

operate fully with plaintiff at all times thereafter in the building up of good will and trade in the importation, sale and distribution of said wines and liquors under such exclusive agencies as might be acquired by the joint enterprise and adventure, all for the equal and mutual benefit and advantage of plaintiff and defendant Walter J. Mulligan. It was agreed between plaintiff and defendant Walter J. Mulligan that any profits or losses resulting from said joint enterprise, undertaking or adventure would be shared equally between plaintiff and defendant Walter J. Mulligan. . . . Thereafter and throughout the life of the joint enterprise and adventure, and at all times until the wrongful acquisition by defendant Walter J. Mulligan of the assets of said joint enterprise, plaintiff, in addition to the hereinafter mentioned funds and banking credit, contributed to the development and building up of the joint enterprise his industry, ability and activity and all of said contributions materially contributed to the success of said joint enterprise.''

The findings further set forth the financial contributions of the two partners from the time of their association, including those made to a California corporation organized by them for the express purpose of continuing the joint enterprise and adventure. The capital stock of this corporation was issued one half to Elsbach and the other half to Mulligan. The trial court further found that the corporation ''was in actuality a partnership or joint adventure business . . . operated for the equal and mutual benefit of plaintiff and defendant'' as exclusive agents for the sale of certain wines and liquors in eleven western states, plaintiff for a short period and subsequently defendant, acting as its president. Its principal agencies—that of Mumm for champagne and McCallum for whisky—were terminable under the agreements creating them upon thirty and ninety days' notice respectively by the principals. It was further found that ''From the time of the first association of plaintiff and defendant, Walter J. Mulligan in said joint enterprise and adventure, and at all times subsequent thereto, plaintiff and defendant, Walter J. Mulligan owed to each other undivided and highest loyalty and utmost good faith, and occupied a fiduciary, confidential and trust relationship to each other.

''Commencing during the month of November, 1934, and thereafter continuing until the month of February, 1937, de-

fendant Walter J. Mulligan, in violation of the aforesaid promises and undertakings of said defendant, and in violation of the trust, confidential and fiduciary relationship created by and arising out of the association of said defendant with plaintiff in the said joint enterprise and adventure, deliberately and in bad faith conceived, formulated and continuously engaged in a course of conduct, both secretive and otherwise, for the purpose of acquiring and appropriating to himself the said exclusive agencies and of depriving the said joint enterprise and adventure of said exclusive agencies and eliminating plaintiff from said business. In pursuance of said course of conduct and of said fixed purpose to eliminate plaintiff from the business, defendant, Mulligan, throughout said period of time continuously resorted to disparagements, pressure, conniving and misrepresentations for the purpose of forcing plaintiff to give up his interest in the business and for the purpose of persuading and inducing the said manufacturers of said wines and liquors and their controlling agents to terminate and cancel or cause the termination and cancellation of the said exclusive agencies, and to grant said agencies to defendant, Walter J. Mulligan, personally.. Pursuant to the said course of conduct thus formulated and conceived by said defendant, and in furtherance of said fixed purpose herein alleged, the said defendant, Walter J. Mulligan, made numerous false representations to the manufacturers of said wines and liquors and to their controlling agents and to the trade, and in particular said defendant falsely represented to said manufacturers and their controlling agents that the plaintiff had failed to engage efficiently in the importation, distribution and sale of said wines and liquors, that the plaintiff had failed to promote the business of the said joint enterprise, that the plaintiff had failed to develop the sale of the products of said manufacturers in an efficient manner, that the plaintiff had failed to perform his duties and obligations in connection with the management and conduct of said joint enterprise, that the plaintiff was unfit by reason of inexperience, inefficiency and lack of financial responsibility and resources to hold and retain the said agencies as a coadventurer with the said defendant, that the plaintiff had contributed little to the success of the business of the joint enterprise, that the plaintiff was a mere subordinate in its affairs, that the plaintiff had acted contrary to

the interest of the said business and was a handicap to the company, that the Elsbach Company was a mere subsidiary or *nom de plume* for the Walter J. Mulligan Company, and was under defendant Mulligan's domination, that the said defendant possessed superior fitness by reason of knowledge, ability, experience and financial responsibilty and resources to receive and thereafter to retain the said agencies to the exclusion of plaintiff, that said defendant and W. J. Mulligan Company were financially responsible for the Elsbach Company, that it was defendant's money, brains, energy and ability that was alone responsible for the building up, establishment, maintenance and success of the business of the joint enterprise, and plaintiff was of no consequence. Each and every one of the said representations was false and was known by said defendant, Walter J. Mulligan, to be false, and was made by said defendant in bad faith and as part of the said course of conduct pursued by him for the purpose of eliminating plaintiff from the business and persuading and inducing the said manufacturers and their controlling agents to terminate and cancel said exclusive agencies, and to grant said agencies to defendant, Walter J. Mulligan.

''In addition to the aforesaid false representations, defendant, Walter J. Milligan, in furtherance of the aforesaid course of conduct carried on by him, deliberately and in bad faith continuously engaged in numerous acts of misconduct against plaintiff, including the following: Said defendant engaged in a course of conduct designed and intended to eliminate plaintiff from all activity in the business and ultimately said defendant did eliminate plaintiff from all activity in the business; said defendant frequently threatened the liquidation of the business and threatened to use his influence to obtain the agencies for himself unless plaintiff relinquished his interest therein to said defendant; said defendant disparaged, belittled, humiliated and abused plaintiff and made plaintiff's position in the Elsbach Company intolerable with the deliberate intention of eliminating plaintiff from the said business; said defendant secretly and surreptitiously conspired with the North American representative of the McCallum Company for the secret accomplishment of a transfer of the McCallum agency to said defendant and in addition to the false representations previously recited hereinabove in these findings defendant also falsely represented to said North

American representative of the McCallum Company that the credit of the Elsbach Company was not worth very much under its name and that any commitments of the Elsbach Company had the credit of the W. J. Mulligan Company behind it; said defendant deliberately, knowingly and in bad faith and under a threat of vilifying and eliminating plaintiff, made and persisted in making frequent unjustified demands for plaintiff's interest and stock in said joint adventure business for the purpose of creating and generating and maintaining an apparent friction and dissension between the joint adventures, which discord was a wholly one-sided affair on the part of defendant, with the knowledge and intention that such wrongful conduct on his part would result in the cancellation of the agencies and would result in the ultimate acquisition of the agencies by the defendant by reason of the said course of conduct engaged in by him; said defendant repeatedly threatened to take the business of the joint adventure for himself unless plaintiff voluntarily relinquished his interest therein; said defendant openly disparaged and vilified to the trade the credit standing, financial resources and valuable name of the Elsbach Company and said defendant openly disparaged plaintiff's ability and contribution to the business.

". . . The said defendant by the aforesaid course of conduct and false representations caused the termination and cancellation on the 25th day of February, 1937, of the exclusive agency for D. & J. McCallum held by said joint enterprise and adventure, and caused the termination and cancellation on the 15th day of February, 1937, of the said exclusive agency of G. H. Mumm Champagne S.V.C.S. & Associates, Inc., and together therewith the remaining exclusive agencies included with the agency of G. H. Mumm Champagne S.V.C.S. & Associates, Inc., as hereinabove alleged, and said joint enterprise and adventure was thereby deprived and stripped of its principal assets, resulting in great and irreparable injury and loss to said joint enterprise and adventure, and to plaintiff as a co-adventurer with said defendant, Walter J. Mulligan.''

The findings thereupon relate the acquisition of the Mumm and McCallum agencies by defendant under the name of W. J. Mulligan & Co. notwithstanding the performance of all of the conditions of the joint adventure by plaintiff throughout a ''controversy'' which was ''wholly one-sided . . . and

was deliberately and in bad faith generated and fomented and maintained by said defendant as a part of his scheme'' to acquire such agencies, to the injury of plaintiff in the sum of $30,000. The court further found that plaintiff and defendant reached a settlement of their difficulties in the years 1935 and 1936 ''under the urgings . . . of the Mumm agency,'' but that immediately thereafter ''defendant completely reverted to type and renewed and continued his conniving to eliminate plaintiff,'' etc.

Specifically Mulligan contends that the court improperly disregarded the corporation and treated Elsbach and Mulligan as partners, and that one partner cannot sue another partner for damages; that the damages assessed are excessive and based upon speculation; that no actionable wrong was committed by Mulligan, and that the two agencies—Mumm and McCallum—should be considered separately. In reference to the McCallum agency it is claimed that the findings are against the weight of the evidence, but it is admitted that under the rules of appellate practice there may be sufficient evidence to support the findings as to that agency. In regard to the Mumm agency, it is contended that there is no evidence to support the finding that Mulligan communicated with that company in an endeavor to induce it to withdraw its agency with the Elsbach company. It is admitted that the McCallum principal desired its agency to follow that of the Mumm. In a word, it is contended that the whole difficulty arose from dissension between the partners or coadventurers.

As appears from the evidence Mumm did not care to have its agency in the hands of a corporation, partnership or joint adventure where the real parties in interest persisted in quarreling and dissension to the possible detriment of the agency. McCallum was anxious that its western agency should be under the control and direction of the distributors acting for Mumm. The evidence of false representations is particularly strong as regards Mulligan's dealings with McCallum, but his schemes and plans for obtaining both agencies for his own company are so interwoven that there is no escape from the conclusion that it was the Mulligan influence, unfairly and wrongfully used, that also brought about the loss by the Elsbach company of the Mumm agency. The record contains approximately twenty-nine hundred pages of testimony and correspondence. The intent of Mul-

ligan is demonstrated by the testimony of a stenographer for the Mulligan company—but whose compensation was actually paid by the Elsbach company—who read certain stenographic notes, dictated by Mulligan of a rough draft to be used as the basis of a letter ostensibly from one of the agencies to Mulligan. The notes contained statements exaggerated or minimized to suit the purpose of Mulligan, together with downright falsehoods. The proposed draft was accompanied by a statement from Mulligan that ''given sufficient time I will have this difficulty removed.'' The ''difficulty'' referred to is plainly Elsbach. The purpose of Mulligan in the preparation of the data designed for incorporation in a communication to be sent the Elsbach company or to Mulligan is expressed in the following manner: ''I would much prefer to have it brought about in this fashion, that is, a request coming from you for definite information as to the E. Company's ability to pay rather than have it come from some other way that might suggest the thought that I initiated this angle with a deliberate intention of weakening his position.'' There is no doubt that Elsbach's position had been and was thereafter weakened through the activities of Mulligan. This matter is concluded by the trial court's finding of wrongdoing, malicious intent and the consequent loss to plaintiff.

The matter of damages is inseparably linked with the adequacy of the evidence to support the findings. It seems proper to consider that question at this point. Both parties submitted in evidence voluminous written data covering profits, expenses, sales, etc., an examination of which here would unduly lengthen this opinion. Defendant claims that no profits were earned by the Elsbach company after the first six months of operation; that the McCallum company went out of business in August 1937 and therefore the agency for that concern could not have existed after that time, and that there is no segregation of profits or losses as between the Elsbach company and the Mulligan company from the date of the transfer of the agency from Elsbach to Mulligan. It is further contended that prospective profits are conjectural, and that an award based upon their capitalization for a five-year period is even more remote, speculative and conjectural.

It should be noted that there is evidence that for a period of time the Elsbach company was doing business in eleven western states approximating a half million dollars in sales annually,

and that its sales of champagne aggregated 80 per cent of all sales of that commodity on the Pacific coast.

The trial court disclosed the basis of its findings of damage as follows: ''It is the value of Elsbach's interest in the business which Mulligan acquired. The only practical way to arrive at this value is to capitalize the earnings. To take round figures the business netted $18,000 in 3½ years, ½ of which belonged to Elsbach. In addition to the $9,000 so realized by Elsbach from net profits he received $12,000 in salary. This averaged per year to Elsbach from the business, the sum of $6,000. I have decided in view of all the factors involved that to capitalize this at 20 per cent, or on the basis of a five year purchase, is reasonable. This would give a value to Elsbach's interest in the business of $30,000. In capitalizing the earnings at 20 per cent I have taken into consideration on the one side the facts that Elsbach devoted his time to the business in return for his salary, that the agencies were revocable and that there was practically no capital investment; and on the other hand that the principals were satisfied with the representation and unlikely to disturb the agencies but for Mulligan's machinations . . . I believe that a prudent buyer stepping into Elsbach's shoes would want to feel that he could get his money back in 5 years. In making this calculation I have not attempted to weigh the claims of excessive or unusual expenditures, but I have, as noted, included Elsbach's salary as a part of the income capitalized. This figure of $30,000 is supported to a degree by the reciprocal offers of $25,000 made by Mulligan and Elsbach, and the fact that neither would accept the offer of the other.'' The ''buy or sell'' offers were not determinative of the amount of damages, but were noted for comparison with the damages assessed. The method of ascertaining damages under the facts of this case was in accordance with well established rules, and the amount is certainly not excessive. If anything, an examination of financial statements indicates that if any criticism may be offered, it would rather be that the amount assessed is inadequate, particularly in view of the findings relative to the malicious machinations of the defendant.

Upon the evidence as presented the trial court had the right to compute plaintiff's damages, on the value of the Elsbach interest destroyed by Mulligan, based upon the previous profits for a reasonable period, and on the loss of

prospective profits, taking into consideration the defendant's fraudulent conduct through which such losses were incurred.

█ A party at fault may not escape the payment of damages merely because it is difficult to ascertain the amount. (*Seymour* v. *Oelrichs*, 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154].) Special circumstances of a case give the court the right to assess the amount of damages where the element of bad faith is involved. (*Kline* v. *Guaranty Oil Co.*, 167 Cal. 476 [140 P. 1].)

█ This is not an action for the breach of a contract between Elsbach and Mulligan, but for damages for the fraudulent inducement of Mumm and McCallum to terminate their contracts with the Elsbach company to the detriment of Elsbach personally. Such conduct is a tort. (Restatement, Torts, sec. 766; 39 C.J., 1373; 84 A.L.R. 67.) In *Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 35 [112 P.2d 631], the court said: "The question thus presented to this court is under what circumstances may an action be maintained against a defendant who has induced a third party to violate a contract with the plaintiff. It is universally recognized that an action will lie for inducing breach of contract by a resort to means in themselves unlawful such as libel, slander, fraud, physical violence, or threats of such action." One who purposely and wrongfully induces another not to perform a contract is liable for the harm caused. (Restatement, Torts, sec. 766; *Remillard-Dandini Co.* v. *Dandini*, 46 Cal.App.2d 678 [116 P.2d 641]; *H. G. Fenton Mat. Co.* v. *Challet*, 49 Cal. App.2d 410 [121 P.2d 788].) The consideration of profits and losses is merely one method of computing damages arising from the commission of the wrongful act. █ For a default of duty a coadventurer may be taxed with the loss caused by him. In *San Francisco Iron etc. Co.* v. *American Milling etc. Co.*, 115 Cal.App. 238, 248 [1 P.2d 1008], the court said: "The existence of the joint adventure being established, it follows that a fiduciary relationship between the coadventurers arose therefrom, which demanded of them the utmost good faith in all their dealings with each other; and this requirement of good faith alone forbade the accrual of any profit, or the acquisition of any secret advantage by one of the coadventurers over the other." The element of bad faith resulting in the detriment shown is the basis for fixing damages. (*Kline* v. *Guaranty Oil Co., supra.*) █ The measure of damages for the diminution of the value of business due to

a wrongful act is "reflected by loss of profits, expenses incurred or similar concrete evidences of injury." (*Steiner* v. *Long Beach Local No. 128,* 19 Cal.2d 676 [123 P.2d 20].) ▮ The capitalization of past profits is a concrete form of ascertaining the value of a business, and determining one factor of the damages sustained. Their amount in the present case was fixed at 50 per cent of the prospective profit of the entire business; this corresponded to plaintiff's one-half interest therein.

In *Overstreet* v. *Merritt,* 186 Cal. 494 [200 P. 11], involving the sacrifice of a business interest, it was held that the party whose wrongful conduct caused the loss may not be absolved because the damages are not susceptible of exact measurement. (*Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386].) It is also the rule that a party is not confined to the actual loss sustained during the period of coadventure, but a capitalization of prospective profits may be included, particularly if instead of a mere breach there appears a fraudulent breach. (*Sobelman* v. *Maier,* 203 Cal. 1 [262 P. 1087].)

In *Caspary* v. *Moore,* 21 Cal.App.2d 694, 699 [70 P.2d 224], the court said: "On the issue of the damage suffered by respondent, it is the rule that where one party to an established business association fails and refuses to carry out the terms of the agreement, and thereby deprives the other party of the opportunity to make good in the business, the former becomes liable in damages suffered as the natural result of the default (*Overstreet* v. *Merritt,* 186 Cal. 494 [200 P. 11]; *Shoemaker* v. *Acker,* 116 Cal. 239 [48 P. 62]); and the recovery may include not only the amounts which the latter was reasonably induced to spend on the faith of the contract in preparing to perform it (*Blair* v. *Brownstone Oil Co.,* 35 Cal.App. 394 [170 P. 160]; *Cederberg* v. *Robison,* 100 Cal. 93 [34 P. 625]), but also such prospective profits the loss of which is the natural and direct consequence of the breach (*Shoemaker* v. *Acker, supra; Sobelman* v. *Maier,* 203 Cal. 1 [262 P. 1087]), and for the latter purpose evidence of profits, both past and present, is admissible as a basis for determining the compensation to which he is entitled. (*Western Union Tel. Co.* v. *Commercial Pac. etc. Co.,* 177 Cal. 577 [171 P. 317]; *Schumann* v. *Karrer,* 184 Cal. 50 [192 P. 849]; *Grosse* v. *Petersen,* 30 Cal. App. 482 [158 P. 511]; *Hacker Pipe &*

*Supply Co.* v. *Chapman Valve etc. Co.,* 17 Cal.App.2d 265 [61 P.2d 944].)'' An exact measure of future damages is seldom ascertainable. If the amount assessed is reasonable and not excessive the duty of review is at an end.

There is no merit in the suggestion that the court should have separately assessed the amount of damages resulting from the loss of the Mumm and McCallum agencies. The action concerns the loss of ''agencies'', and their acquisition by Mulligan by means of a series of acts inextricably woven as to the two—varying at times, but always designed to accomplish one purpose, namely, the promotion of his own interest to the detriment of plaintiff.

From the evidence plaintiff is entitled to recover against his coadventurer; each occupied a fiduciary relation to the other which forbade the taking by either of an unfair advantage over the other. (*San Francisco Iron etc. Co.* v. *American Milling etc. Co., supra; Menefee* v. *Oxnam,* 42 Cal. App. 81 [183 P. 379]; *Young* v. *Young Holdings Corp., Ltd.,* 27 Cal.App.2d 129 [80 P.2d 723].) The fact that the agencies were revocable does not affect the right of recovery. (*Donleavey* v. *Johnston,* 24 Cal.App. 319 [141 P. 229].) It was proper for the trial court to determine their value including the amount of future returns reasonably to be expected from their exercise. (*Donleavey* v. *Johnston, supra; Steinweg* v. *Epstein,* 152 Misc. 24 [271 N.Y.S. 263].) The record discloses more than dissension and quarreling between Elsbach and Mulligan, the only real persons having an actual interest in the business, regardless of whether it was of a corporate nature, or arising from a partnership or coadventure.

The main question on appeal is, should the action have been brought in the name of the corporation? Appellant contends that an individual stockholder has no interest in the corporate property as such; nor has he any legal right to sue upon wrongs done the corporation. This argument is based primarily upon the contention that since plaintiff participated in the formation of the corporation he may not now proceed in disregard of the corporate entity, since when a corporation supersedes a partnership or joint adventure, rights subsequently accruing to the partners or joint adventurers are not based on that relationship. The soundness of the contention generally may be admitted but there are exceptions to the general rule. If a corporation or a formal partnership is a

mere agency for the purpose of convenience in carrying out a joint venture agreement, and independent and innocent third parties, such as creditors or stockholders, are not injured thereby (which does not appear in the present case), justice would seem to demand that in determining the rights of the parties they be placed in the position each occupied under the original agreement. (*Shorb* v. *Beaudry*, 56 Cal. 446; *Wise Realty Co.* v. *Stewart*, 169 Cal. 176 [146 P. 534]; *Puccetti* v. *Girola*, 20 Cal.2d. 574 [128 P.2d 13]; *Continental Securities etc. Co.* v. *Rawson*, 208 Cal. 228 [280 P. 954].) There may be conflicts in the evidence as to whether the operations of the parties constituted genuine corporate functions or whether the corporate form was employed merely as a convenient method of carrying out the agreement of the parties. The trial court's resolution of such conflicts finds ample support in the record. In *Asamen* v. *Thompson*, 55 Cal.App.2d 661, 669 [131 P.2d 841] the court said: "Where a corporation is but the instrumentality through which an individual, for convenience, transacts his business, all of the authorities hold such a corporation bound as the owner of the corporation might be bound, or conversely, hold the owner bound by the acts which would bind his corporation. (*Mirabito* v. *San Francisco Dairy Co.*, 8 Cal.App.2d 54 [47 P.2d 530]; *Mervyn Inv. Co.* v. *Biber*, 184 Cal. 637 [194 P. 1037].)"

In several instances the findings refer to the parties as partners. When the findings are read as a whole, however, it is plain that such references are merely to the parties in their original relationship. The rules governing an association known as a joint venture essentially resemble those controlling partnerships. They are not identical, but are similar. Ordinarily if one partner has wronged another in respect of a partnership matter, the remedy is by general accounting, but this rule does not apply with equal force to the right of an adventurer to sue his coadventurer. He may sue at law for damage. In *San Francisco Iron etc. Co.* v. *American Milling etc. Co.*, *supra*, the court said (p. 249): "The agreement was breached by the defendants at the very threshold of the enterprise by secretly negotiating for and purchasing the property on their own account, and the settled rule in such cases is, as stated in *Keys* v. *Nims*, 43 Cal.App. 1 [184 P. 695, 699], ' . . . that one party in a joint adventure may sue the other at law for a breach of the contract or a share

of the profits or losses or a contribution for advances made in excess of his share, as where the adventure has been closed and a party thereto is entitled to a sum certain as his share of the adventure, but the right thus to sue at law does not preclude a suit in equity for an accounting. (15 Ruling Case Law, p. 507.)' (See, also, *McCreery* v. *Green,* 38 Mich. 172; *Saunders* v. *McDonough,* [191 Ala. 119 (67 So. 591)] *supra; Joseph* v. *Sulzberger,* 136 App.Div. 499 [121 N.Y. Supp. 73] ; *Lind* v. *Webber,* 36 Nev. 623 [Ann.Cas. 1916A, 1202, 50 L.R.A. N.S. 1046, 134 P. 461, 135 P. 139, 141 P. 458].)'' In the present case a single action could have settled the whole controversy. An action confined alone to an accounting would not have covered the matter of damages for the wrongful maneuvering to change the agencies from Elsbach to the Mulligan company.

Under such circumstances as the trial court found, a suit brought in plaintiff's own name is proper rather than to employ the round-about way of achieving the same result by the filing of a suit in the name of the corporation or by compelling plaintiff to seek redress in an accounting.

An examination of appellant's over four hundred references, consisting of statutes, cases and treatises, in support generally of his views on the factual and legal questions has failed to convince this court that an action will not lie by an adventurer against his coadventurer for a wrong inflicted by the latter in the carrying out of their joint undertaking, notwithstanding that for the purposes of convenience the enterprise has been clothed with a corporate form. In this case the resort to the corporate mechanism cannot efface the true purpose of the original joint adventure. The corporate entity and appellant's machinations disclosed by the evidence both before and after its creation were used with the fixed purpose of obtaining the interest and property of Elsbach. (*Imperial Ice Co.* v. *Rossier, supra.*)

We adopt the following from *Young* v. *Young Holdings Corp., Ltd., supra,* (p. 150) : ''The judgment rendered is just. If it were to be criticized at all, it would be upon the ground that it did not go far enough in restoring to plaintiff . . . that which defendants wrongfully took from them.''

There is no appeal from the judgment in so far as action No. 280,212 is concerned.

It is hereby ordered that the judgment in favor of R. H.

Elsbach is affirmed; the judgment that Herman E. Elsbach & Sons, Inc. take nothing by its cross-complaint is also affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied May 26, 1943, and appellant's and cross-complainant and appellant's petitions for a hearing by the Supreme Court were denied June 24, 1943. Schauer, J., voted for a hearing.