Filed 1/23/25  Audio Visual Labor Management v. Fuller CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| AUDIO VISUAL LABOR MANAGEMENT, INC., | D083457 |
| Plaintiff, Cross-defendant and Respondent, | |
| MIKE S. FULLER, | (Super. Ct. No. 37-2018-00034571-CU-PO-CTL) |
| Cross-defendant and Respondent, | |
| v. | |
| MARY MIKA READ, | |
| Defendant, Cross-complainant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Perez Vaughn & Feasby, Jeffrey A. Feasby, and Todd R. Kinnear for Defendant, Cross-complainant and Appellant.

Lyfe Law and Troy M. Mueller for Cross-defendants and Respondents.

# I. INTRODUCTION

After founding Audio Visual Labor Management, Inc. (AVLM), and operating it for several years, Mary Mika Read and Mike S. Fuller's relationship fell apart. Read resigned from AVLM, but Fuller felt Read engaged in actions upon leaving which undermined AVLM. Consequently, AVLM sued Read for breach of fiduciary duty after she left. Read filed a cross-complaint against Fuller and AVLM, alleging Fuller breached the Joint Venture Agreement (JVA) he entered with Read early in their business relationship. Fuller and AVLM prevailed at trial.

Read appeals from the judgment on two grounds. First, she claims the trial court erred in finding AVLM's corporate form superseded the JVA rendering the JVA unenforceable. Second, Read contends the trial court abused its discretion in admitting expert testimony from a lawyer regarding her breach of fiduciary duty. We disagree with both grounds and affirm the judgment.

# II. BACKGROUND

In 2012, Read and Fuller owned separate audio visual companies, and they agreed to form a joint business to provide labor for that industry. They executed the JVA, which stated, "For the purposes of this Joint Venture, the parties will form a corporation to be named [AVLM]. All Joint Venture business will be conducted through this Joint Venture Corporation." Paragraph 8 of the JVA defined Read's and Fuller's roles while identifying their "principal responsibilities."

Although the JVA called for AVLM's future creation, the parties reversed that sequence. Read filed AVLM's articles of incorporation with the California Secretary of State on December 6, 2012, before signing the JVA on

2

December 26, 2012. Fuller signed the JVA after AVLM's incorporation but before Read signed the JVA.[1]

On January 10, 2013, Read and Fuller elected themselves directors of AVLM. They also held their first meeting as directors on that date, appointing themselves officers, adopting bylaws, and issuing corporate stock. AVLM started doing business immediately and continued operating successfully through 2018.

Between 2013 and 2018, AVLM observed corporate formalities. It held annual director and shareholder meetings from 2014 through 2017, at which Read and Fuller discussed various matters such as obtaining insurance and expanding the business. AVLM also held special director and shareholder meetings in 2018, where Read and Fuller discussed sale of the company, corporate dissolution, and Read's resignation.

After Read resigned from AVLM in 2018, AVLM sued her for breach of fiduciary duty. AVLM claimed various breaches, including that Read skimmed 10 percent of all revenues from clients she brought to AVLM, that when Read left the company she improperly closed AVLM's accounts, she took AVLM employees with her, as well as AVLM clients, and improperly distributed AVLM assets.

Read responded with a cross-complaint against Fuller and AVLM for breach of contract and declaratory relief.[2] Read alleged Fuller breached both Paragraph 8 and the dissolution provisions of the JVA. Read also disputed any wrongdoing, claiming she and Fuller agreed that she would receive a

---

[1]     It is unclear what exact date Fuller signed the JVA.

[2]     Read's cross-complaint initially asserted additional causes of action, but they were either summarily adjudicated or dismissed prior to trial.

3

10 percent discount on any labor AVLM provided to her separate company, and prior to her departure any preparations she made to compete with AVLM were lawful.

At a bench trial in 2023, Read and Fuller expressed conflicting interpretations of the JVA. According to Fuller, he and Read initially discussed a joint venture of their companies, but that was too convoluted so they decided to form a corporation. Fuller testified that he only signed the JVA because Read and the drafting paralegal said it was necessary to form the corporation. Read, on the other hand, testified the JVA was their guidebook and provided the framework for their company. Amy Harleman, an attorney that represented Read in her attempt to dissolve AVLM, also testified about the JVA. She advised Read that the JVA was unusual because it addressed issues normally handled within a corporation, and that the JVA contained unclear dispute resolution procedures.

Both sides also presented expert testimony from lawyers regarding the reasonableness of Read's actions at AVLM. William Ravin testified on Read's behalf, opining she did not act unreasonably in resigning from AVLM, dividing its assets, and paying its debts. Fuller's expert, Chad Ensz, testified that Read unreasonably departed from AVLM as evidenced by how Read distributed AVLM's cash, closed its bank account without authorization, took AVLM's confidential information, and solicited an AVLM employee to work for her.

The trial court issued a statement of decision on March 2, 2023, finding in favor of AVLM and Fuller. It determined Read breached her fiduciary duties to AVLM because prior to resigning, she obtained AVLM's sensitive information, closed AVLM's bank account, distributed cash to herself, and recruited AVLM's employees. However, AVLM did not prevail on the

4

10 percent skimming issue. The court decided on that question Read and Fuller never appeared to reach an agreement capable of enforcement, instead practicing their respective interpretations for several years without arriving at any mutual understanding.

As for Read's breach of contract claim, the trial court determined Read and Fuller acted "momentarily as joint venturers, and more permanently as directors, officers and shareholders of" AVLM. The trial court found the JVA unenforceable because AVLM's corporate status superseded the joint venture, and Read's reliance on an exception to that rule was unpersuasive. Under that exception, the rights and obligations of joint venturers may be enforced when a corporation "is a mere agency for the purpose of convenience in carrying out a joint venture agreement." (*Elsbach v. Mulligan* (1943) 58 Cal.App.2d 354, 368–369 (*Elsbach*).) Noting that Read and Fuller observed corporate formalities and benefited from corporate status for more than five years, the trial court found that AVLM acted as more than a mere agency for the JVA. It also cited Harleman's testimony that the JVA contained unclear terms, which was consistent with the trial court's determination that the parties never agreed on the 10 percent labor discount issue.

After receiving additional briefing on damages, the trial court awarded AVLM $407,095.06. It then entered judgment in favor of AVLM and Fuller on June 12, 2023. Read's timely appeal followed.

### III. DISCUSSION

#### A. *The Trial Court Did Not Err in Finding the JVA Unenforceable*

Read argues the JVA is not a preincorporation agreement because Fuller and she executed it *after* AVLM incorporated; therefore, the general rule of corporate supersession does not apply. She alternatively claims the

JVA falls within the exception to the preincorporation supersession rule because the parties undisputedly intended the JVA to remain enforceable despite AVLM's corporate status. Read further contends the trial court employed the wrong standard of review in assessing the exception to the general rule because it focused on corporate formalities and the benefits from being a corporation and did not address the parties' intent. Finally, Read asserts the trial court's reference to Harleman's testimony indicates it merely found the JVA's dissolution provisions unenforceable, so it should have enforced the severable terms in Paragraph 8. We disagree.

1.    Supersession by Incorporation

"A joint venture is 'an undertaking by two or more persons jointly to carry out a single business enterprise for profit.' " (*Weiner v. Fleischman* (1991) 54 Cal.3d 476, 482.) Although typically of shorter duration, joint ventures are virtually the same as partnerships. (*Ibid*.) A joint venture agreement may be informal or oral, and its existence depends on the parties' intentions. (*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 525.)

An association cannot be both a joint venture and a corporation. (*Eng v. Brown* (2018) 21 Cal.App.5th 675, 694 (*Eng*) ["An association organized as another entity (e.g., a corporation) is not a partnership."]; *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1156 (*Persson*) ["The rights and obligations of partnership cannot exist contemporaneously with the rights and obligations of shareholders in a corporation." (Italics omitted.)].) As such, the general rule is that when joint venturers incorporate, the joint venture automatically terminates. (*Eng*, at p. 705.) "No specific showing of intent or agreement to terminate the partnership is required." (*Ibid*.)

However, as stated above, there is an exception to this rule. "If a corporation . . . is a mere agency for the purpose of convenience in carrying

6

out a joint venture agreement, . . . justice would seem to demand that in determining the rights of the parties they be placed in the position each occupied under the original agreement." (*Elsbach, supra,* 58 Cal.App.2d at pp. 368–369.) Under this exception, the proponent of the joint venture has the burden "to prove that the parties entered into a preincorporation agreement or otherwise intended for their [joint venture] to survive incorporation because the 'ordinary principle' is that the [joint venture] would not survive." (*Eng, supra,* 21 Cal.App.5th at p. 696.) Nonetheless, "Courts have shown considerable skepticism towards alleged preincorporation agreements." (*Ibid.*)

2. <u>Standards of Review</u>

As Read acknowledges, the JVA's validity is a question of fact.[3] (*Pellegrini v. Weiss, supra,* 165 Cal.App.4th at p. 525.) Accordingly, our "power begins and ends with a determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

Separately, Read's claim that the trial court applied the incorrect legal standard in determining whether the JVA survived incorporation is subject to de novo review. (*Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 932.)

---

[3] We disagree, however, with Read's assertion that the decisive facts are undisputed invoking independent review.

3. Analysis

ALVM's existence began on December 6, 2012, when Read filed articles of incorporation with the Secretary of State. (Corp. Code, § 200, subd. (c).) Read signed the JVA on December 26, 2012, and Fuller signed it before that date, but sometime after AVLM incorporated. Read and Fuller then appointed AVLM's officers and directors and issued stock January 10, 2013.

Under these circumstances, the JVA is not technically a preincorporation agreement because it was executed after AVLM's incorporation. However, AVLM was merely a shell at the time of the JVA's execution because the steps to complete creating AVLM, such as the appointment of officers and directors and the issuance of shares, had not yet taken place. Those actions occurred January 10, 2013, which was after Read and Fuller executed the JVA. Consequently, the JVA was executed prior to the complete formation of AVLM.

While this case presents as a variation on the preincorporation agreement scenario, we do not see the timing of the parties' actions as dispositive. Corporate supersession exists because "[t]he rights and obligations of [a joint venture] cannot exist contemporaneously with the rights and obligations of shareholders in a corporation." (*Persson, supra,* 125 Cal.App.4th at p. 1156.) And there is an exception to the supersession rule because in some circumstances, " '[s]ubstantial justice can be administered . . . by treating the parties in the light of their agreements between themselves, independently of their incorporation." (*Id.* at p. 1158.) Here, fairness is not defeated by hewing closely to long held principles of corporate supersession.

We also disagree that the trial court applied the wrong standard. Read directed the trial court to the proper standard in her trial brief, which the

8

trial court quoted in its statement of decision.[4]  Further, Read is incorrect that the trial court improperly considered Read and Fuller's adherence to corporate formalities and benefit from the corporate form.  Numerous cases have considered those circumstances in determining the parties' intentions. (See, e.g., *Persson, supra,* 125 Cal.App.4th at p. 1156 [finding corporate supersession when "No evidence was presented of any failure since that time to observe corporate formalities.  The corporation issued shares, appointed directors and officers, hired a corporate attorney, filed corporate tax returns, held directors' meetings, and so on."]; *Eng, supra,* 21 Cal.App.5th at p. 702 [partnership superseded where "corporation owned and operated the [business], its corporate form was respected, and it made distributions consistent with the shareholders' S corporation election"]; *Elsbach, supra,* 58 Cal.App.2d at p. 369 [trial court reasonably found partnership survived when there were "conflicts in the evidence as to whether the operations of the parties constituted genuine corporate functions or whether the corporate form was employed merely as a convenient method of carrying out the agreement of the parties"]; *Mindenberg v. Carmel Film Productions, Inc.* (1955) 132 Cal.App.2d 598, 601 [finding no joint venture where the corporation "was promptly formed; . . . conducted the business throughout, observ[ed] the customary corporate forms, . . . and other proof fail[ed] to reveal any respect in which the corporation was used . . . in any manner or sense other than that of the normal corporation"].)

Accordingly, the trial court's reliance on corporate formalities does not indicate it failed to consider the parties' intentions regarding the JVA.

---

[4]    Specifically, the legal standard described in the statement of decision states the general rule of corporate supersession and the exception that we describe in section III(A)(1) of this opinion.

9

Rather, the trial court relied on the parties' actions surrounding AVLM and the JVA as evidence of intent to pursue their arrangement as a corporation.[5]

Finally, substantial evidence supports the trial court's corporate supersession finding. As noted above, the trial court reasonably focused on the parties' actions; namely, their observance of AVLM's corporate formalities for more than five years. Further, Fuller and Read elected directors and officers, issued shares, adopted bylaws, and addressed corporate business at director and shareholder meetings between 2013 and 2018. AVLM also conducted business throughout that period, paying taxes and maintaining a bank account in its own name. As determined by the trial court, and consistent with the numerous cases cited above, these actions indicate the parties did not intend for AVLM to be "a mere agency for the purpose of convenience in carrying out" the JVA. (*Elsbach, supra* 58 Cal.App.2d at pp. 368–369.)

The trial court also doubted the parties agreed on the JVA's continuation, finding it to be a momentary arrangement. Despite requiring Read and Fuller's joint business to be conducted through a corporation, the JVA also attempted to govern the operation and dissolution of that corporation. As recognized by Harleman, this was highly unusual, and the JVA's dispute resolution procedures were unclear. In citing Harleman's opinion, the trial court found it consistent with its earlier conclusion that Read and Fuller practiced their respective interpretations of the 10 percent labor-cost discounting issue without memorializing any agreement. As such, the trial court referenced the JVA's lack of clarity as evidence that the parties

---

[5]     For these reasons, Read's objection to the trial court's statement of decision for relying on corporate formalities was unfounded and does not impact our substantial evidence review as Read suggests.

10

never had a meeting of the minds on the JVA's ongoing application; the trial court did not merely find the dissolution provisions unenforceable as Read suggests. The trial court's analysis is supported by Read and Fuller's conflicting testimony regarding their understanding of the JVA and their subsequent continuation of their arrangement solely as a corporation.

For these reasons, the trial court did not err in finding the JVA unenforceable.

## B.    *The Trial Court Did Not Abuse its Discretion in Admitting Ensz's Testimony*

Read argues that Ensz's testimony regarding the reasonableness of her conduct was improperly based on legal conclusions. Read also claims Ensz lacked relevant experience to opine on her actions. We are not persuaded.

### 1.    Expert Testimony

" 'Generally, the opinion of an expert is admissible when it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ." [Citations.] Also, "[t]estimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." ' " (*Burton v. Sanner* (2012) 207 Cal.App.4th 12, 19.) "However, an expert is not permitted to give an opinion on questions of law or legal conclusions." (*City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 728.) An expert's opinion must be based on matter "perceived by or personally known to the witness or made known to him at or before the hearing." (Evid. Code, § 801, subd. (b).)

### 2.    Standard of Review

" 'A trial court's determination that expert testimony is admissible is reviewed for an abuse of discretion.' " (*Burton v. Sanner*, *supra*,

11

207 Cal.App.4th at p. 18.) Under this "onerous test," discretion is abused when " ' "the court exceeds the bounds of reason" ' " (*ibid*.), or its ruling is " 'so irrational or arbitrary that no reasonable person could agree with it' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773).

### 3. Analysis

Prior to forming his opinions in this case, Ensz reviewed deposition testimony of the parties and other trial witnesses, summary judgment papers, documents from Harleman, text messages, AVLM's governing documents, and the JVA. He then repeatedly referenced this material when stating his opinions, demonstrating he based his opinion on matter "made known to him at or before the hearing." (Evid. Code, § 801, subd. (b).)

Although Ensz's opinions may have touched on general legal matters regarding corporate governance, we have no doubt the trial court understood the proper scope of his testimony. For example, when informed each side would present expert testimony from lawyers, the trial court stated, "the court is not about to let lawyers tell the court what the law is, what the conclusions are that they think the court should reach." The court later explained, "I don't expect that counsel should try to elicit, nor should you anticipate that the court will receive, opinion testimony on the subject of whether one or more of the parties . . . breached their fiduciary duty. That's not the subject of expert testimony. There may be a window of reasonableness that lawyers can comment upon. [¶] In addition, I wouldn't expect that you would elicit, nor the court would receive, opinion testimony on what counsel thinks constitutes a fiduciary duty. That's for the court and the court alone."

12

The trial court also gave each side similar latitude with their experts, keeping the proper scope of the opinions in mind as shown by this example:

[Ensz]: In order to make a proper and authorized distribution, there either has to be an authorization from the board of directors, or it has to be in connection with a dissolution.

When I reviewed the corporate record, I did not see an authorization of the board of directors to make the distributions, and I also did not see a proper election to wind up and dissolve.

[Read's Counsel]: Objection, Your Honor. Move to strike the witness' testimony regarding what is required as being a legal opinion. Beyond the scope of expert witness testimony.

[…]

THE COURT: In part, it may be that some of the testimony we just heard could fall under the category objected to by the defense. Mr. Ravin was given some latitude to use terms of art. Plaintiff's expert will be given the same latitude.

Ultimately, the -- everyone understands the court and the court alone will make the decisions on the legal opinions. So the objection will be overruled.

The record therefore does not indicate that the trial court accepted any legal opinions from Ensz.

As for Ensz's experience, he never dealt with a situation like Read and Fuller's where the owners of a corporation did not cooperate in dissolving the corporate entity. Nonetheless, Ensz focused on corporate transactional law in his approximately 20-year legal career, handling 20 to 30 dissolutions, and he co-authored a treatise chapter on fiduciary duties. Based on this experience,

13

there was nothing irrational or arbitrary about allowing Ensz to testify as a corporate transactional expert.

For these reasons, the trial court did not abuse its discretion in admitting Ensz's testimony.

## IV. DISPOSITION

The judgment is affirmed.  Fuller is awarded costs on appeal.


RUBIN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


CASTILLO, J.

14